In re David GAUKLER and Kathleen Gaukler, Debtors.

Bankruptcy No. 86–06261.

United States Bankruptcy Court, D. North Dakota.

May 28, 1986.

William Kirschner, Fargo, N.D., for debtors.

Gary Cameron, Moorhead, Minn., Trustee.

William Westphal, U.S. Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on its own Order to Show Cause issued *sua sponte* on April 21, 1986, directing the Debtors to appear and show cause why their Chapter 7 petition should not be dismissed pursuant to the substantial abuse provision of section 707(b) of the Bankruptcy Code.

A hearing was held on May 14, 1986, and the Debtor, David Gaukler, filed his Affidavit in response to the Order. An affidavit has also been filed by Douglas R. Horchak, Assistant Director of Church Administration for the Worldwide Church of God. Counsel for the Debtors also provided the Court with a brief.

This case came to the Court's attention after examination of the schedules indicating that from a monthly net income of $1,802.56 the Debtors had monthly expenditures of $2,372.47 including a contribution of $672.48 per month for religious contributions which, given their financial condition, seemed excessive.

From the affidavits submitted, the facts are as follows: The Debtors have four children all under the age of eight which reside with them. Since filing their bankruptcy, Mrs. Gaukler has lost her job. The families living expenses are by no means extravagant. Their schedules indicate that they are spending only $280.00 per month on food, which for a family of six, would in this Court's experience purchase little more than subsistence level provisions. Additionally, the Debtors have lost their home and are renting living quarters. They have also given back their automobile to the secured creditor. The Debtors have gone through credit counselling and have tightened their budget belt everywhere they can except for the matter of religious donations. The Debtors, are members of the Worldwide Church of God which Requires its members to donate ten percent (10%) of their income to the church as well as saving an additional ten percent (10%) for their personal use in paying the expenses of celebrating annual holy days and festivals. Every third and sixth year out of seven, members of the church are also required to donate a further ten percent (10%) for the support of widows, orphans and other needy persons. The Debtors' schedules reveal an unsecured debt of $4,900.00 stemming principally from credit card purchases. They also have secured debt of some $46,000.00, the bulk of which is due to a first and second mortgage on their home.

From the case law that has thus far developed, the following are the criteria against which the facts of a particular case are to be assessed in determining whether substantial abuse exists sufficient to mandate dismissal under section 707(b):

(1) whether the debtors have a likelihood of sufficient future income to fund a Chapter 13 plan which would pay a substantial portion of the unsecured claims;

(2) whether the debtors' petition was filed as a consequence of illness, disability, unemployment or some other calamity;

(3) whether the schedules suggest the debtors incurred cash advances and consumer purchases in an excess of their ability to repay them;

(4) whether the debtors proposed family budget is excessive or extravagant;

(5) whether the debtors' statement of income and expenses is misrepresentative of their true financial condition.

*In re Grant,* 51 B.R. 385 (Bankr.N.D.Ohio 1985); *In re White,* 49 B.R. 869 (Bankr.W. D.N.C.1985); *In re Bryant,* 47 B.R. 21 (Bankr.W.D.N.C.1984). The most important criteria is the Debtors ability to make repayment. This, of course, requires in the instant case for the Court to reach the conclusion that the Debtors' proposed family budget including as it does a monthly religious contribution of $672.48 is excessive or extravagant. Reducing the religious donation to something more typical of religious contributions by financially troubled debtors, would leave a considerable uncommitted sum available each month

for debt reduction. This uncommitted sum would be further increased by the elimination of the $616.00 per month mortgage and automobile obligations which are only partially offset by the Debtors recently incurred monthly rental obligation of $300.00 per month.

It must first be observed, after review of the Debtors' expense schedules, that the Debtors' monthly expenses are unrealistically low in the area of food and medical. Increasing these two categories to more realistic levels would all but eliminate any excess that might be generated by the mortgage and auto payment elimination.

The Debtors are not typical of most individuals who find their way into financially destitute circumstances. To the Court, their willingness to make religious contributions to the extent they are smacks of irresponsibility. Apparently they are willing, on the basis of church dictates, to sacrifice the financial well-being of themselves and their children in order to make contributions they obviously cannot afford. This is ultimately, however, a matter between the Debtors and God. This Court will not presume to know by what avenue one ought to seek salvation and recognizes that in the eternal scheme of things material accomplishments count for naught. The Debtors seem quite sincere in their conviction and this Court is not so presumptuous as to inflict its personal views of religious and financial responsibility upon them. However, it seems a quite stern and uncaring religion that would require faithful adherence to such a level of giving when the persons being asked to give are jeopardizing the welfare of their family in the course of compliance. In deed, it is ironic that the Debtors' church requires a ten percent (10%) donation for the support of the needy from the very persons who are in need. If ever anyone was in need, it is the Gauklers.

In sum, the Court concludes that without the availability of the money presently being committed to religious purposes, the Debtors would not have the means with which to make a meaningful payback on their unsecured debt. As noted by their counsel, no Court has suggested that a debtor must give up good faith religious beliefs and obligations in order to come within the ambit of Chapter 7. With this comment the Court agrees and concludes that substantial abuse does not exist in this case in consideration of the entirety of the circumstances.

Accordingly, IT IS ORDERED that the petitioners, David and Kathleen Gaukler, be GRANTED relief pursuant to the provisions of Chapter 7.