**In the Matter of Stephen ANTAL, Debtor.**

**Bankruptcy No. 86–02822–3.**

United States Bankruptcy Court, W.D. Missouri, W.D.

April 14, 1988.

John R. Stonitsch, Kansas City, Mo., Trustee.

W. Christopher Hodge, Knob Noster, Mo., for debtor.

ORDER REINSTATING CHAPTER 7 PROCEEDINGS; GRANTING CREDITORS 30 DAYS IN WHICH TO OBJECT TO DISCHARGE OR FILE NONDISCHARGEABILITY COMPLAINTS, OR BOTH; AND DIRECTING THE CLERK OF THE BANKRUPTCY COURT, IN THE ABSENCE OF ANY TIMELY–FILED OBJECTION TO DISCHARGE, TO PROCESS THIS CASE TO DISCHARGE

DENNIS J. STEWART, Chief Judge.

This court formerly issued its written order dismissing the within chapter 7 proceedings as a "substantial abuse" of the provisions of chapter 7 within the meaning of § 707(b) of the Bankruptcy Code. See *Matter of Antal*, 74 B.R. 8 (Bkrtcy.W.D. Mo.1987). The debtor filed a timely motion for reconsideration, based not only on a great array of alleged errors attributed to the reasoning of the court in entering its order of dismissal, but also upon changes in the debtor's taking on additional burdens after the commencement of the within chapter 7 proceedings, including payments on a new automobile and the increased obligations of a new marriage.

When this court was in the process of attempting to determine whether a debtor

could thus defeat the letter and intent of § 707(b) by voluntarily taking on new obligations—at the expense of the preexisting creditors, the debts to whom are sought to be discharged in these chapter 7 proceedings—the district court issued its decision in *Matter of Brady,* 86 B.R. 616 (W.D. Mo.1987). In that case, the debtor was a recipient of social security benefits which she admittedly did not use for her own support and maintenance, but rather, according to the evidence which was adduced in the bankruptcy court, which was simply saved while her board and room was fully and amply provided by relatives.[1] She sought to discharge an inordinately small amount of debt, totaling only $5,448.36.[2] Applying the standards which had hitherto been enunciated in the case decisions, this court concluded as follows:

"In the hearing of January 16, 1987, the debtor admitted that she had no expenses due to the fact that she is boarded by others. She therefore has $448 per month with which to pay $5,448.36 in unsecured debt. Payment of only $200 per month through a chapter 13 plan would result in full payment in a little over two years. Section 707(b) therefore requires dismissal. 'The credit industry in proposing changes in the Bankruptcy Code argued that it was both unfair to creditors and burdensome to the public at large to allow debtors to seek Chapter 7 relief giving little or nothing to creditors where a substantial portion of those debts could be paid out of disposable income. Legislative history suggests that section 707(b) was primarily directed towards this kind of abuse ... Congress

was seeking to eliminate a perceived abuse of the bankruptcy system by consumer debtors who have sufficient future income by which they would be capable of paying back their debts.' *In re Kress,* 57 B.R. 874, 877, 878 (Bkrtcy.D.N. D.1985). This case is accordingly hereby DISMISSED."

The district court, however, relied upon the characterization of social security payments in § 513.430(10)(a) RSMo as exempt property to reverse that decision. The reasoning of the district court was as follows:

"Appellant points out that her monthly Social Security check is exempt property from her bankruptcy estate. *See* 11 U.S. C. § 522; 42 U.S.C. § 407(b); Mo.Rev. Stat. §§ 513.427 and 513.430(10)(a) (1986). This court agrees with appellant that it was error to dismiss her Chapter 7 petition on the grounds that she could pay her unsecured creditors with exempt income. *See In re Mastroeni,* 56 B.R. 456, 458–59 (S.D.N.Y.1985)."

The district court's injection of considerations of the exempt character of certain property or money which might otherwise be available to pay creditors was a departure from prior authority, which simply considered whether the debtor had an ability to pay, regardless of whether the ability derived from property or money which would be considered part of the bankruptcy estate.[3] Indeed, because all income which would be available to pay creditors would necessarily be postpetition income, it could not, by reason of that same fact, be considered estate property.[4]

---

1. Her room and board was provided by her daughter and son-in-law.

2. See this court's order of January 22, 1987.

3. In fact, as observed below, none of the postpetition income which has been repeatedly considered in the case decisions under § 707(b) to be determinative of ability to pay could be property of a chapter 7 estate, which is limited to the legal and equitable interests of the debtor "as of the commencement of the case." Section 541(a)(1) of the Bankruptcy Code. And, in fact, the case decision which is relied upon by the district court in *Brady, supra,* is one which

explicitly holds that "the debtor's postpetition income may not be treated as property of the estate in the context of 11 U.S.C. section 541 and as such the debtor cannot be compelled to fund a chapter 11 [or 13] plan with such income." *In re Mastroeni,* 56 B.R. 456, 459 (Bkrtcy.S.D.N.Y. 1985). That decision accordingly holds section 707(b) to be ineffective and insufficient in its "omission of specific standards to be applied," 56 B.R. at 460, and treats the statute, accordingly, as does the district court in *Brady, supra,* as a dead letter.

4. See note 3, *supra.*

Nor can the *Brady* decision be interpreted to stand for a narrower principle than the general principle which it has adumbrated to the effect that property which the trustee could not command to answer to prepetition claims may not be considered available to determine ability to pay under § 707(b), *supra*. For, under the governing law of the State of Missouri, social security payments which are not utilized to pay expenses, but rather are deposited as savings are not exempt from creditors.[5] If those monies were indeed exempt under state law, it is difficult to imagine why the debtor in the *Brady* case, *supra*, would have needed to obtain a discharge in bankruptcy, for she would have had no property from which creditors could exact payment. It can only be concluded, therefore, that the *Brady* decision rests upon the premise that money or property which may not be collected by the trustee—as opposed to a creditor—may not be regarded as available to pay creditors when ability to pay becomes the issue under § 707(b), *supra*. [6]

If that is the linchpin of the district court decision, then any effective use of § 707(b), *supra*, is effectively eliminated. For all

postpetition income is by law exempted from the bankruptcy estate and can in no way be collected by the trustee in bankruptcy, nor does it constitute money or property with respect to which the bankruptcy court may exercise jurisdiction, except by the explicit consent of the debtor, as in a chapter 13 or chapter 11 proceeding.

The same consequence must logically follow, moreover, even if the *Brady* decision must be given the narrowest conceivable construction—that the money or property considered to be exempt from execution, attachment or garnishment by creditors under state law cannot be considered by a bankruptcy court in determining a debtor's ability to pay his creditors under § 707(b), *supra*. For Missouri state law effectively exempts from garnishment all but 25% of an individual's earnings [7] and all but 10% of those earnings if the individual is the head of a family and is a resident of Missouri.[8] It seems quite clear that if, in determining ability to pay under § 707(b), *supra*, the court must always initially subtract 75% to 90% of the debtor's income from the process of determining whether there is excess income,[9] virtually no debtor in chapter 7

---

**5.** "In *Recor v. Bank,* 142 Mich. 479, 106 N.W. 82, 5 L.R.A. (N.S.) 472, 7 Ann.Cas. 754, the Supreme Court of Michigan construed a statute cast in almost the identical language of our own ... and held that it applied to insurance money only before it has been paid over to the beneficiary, and therefore did not exempt from garnishment money which had been paid as a benefit to the beneficiary and had been deposited by her in the bank." *Bank of Brimson v. Graham,* 335 Mo. 1196, 76 S.W.2d 376, 381 (1934). In that case, the language of the statute declared insurance monies "to be paid" to the beneficiary to be exempt. Similarly, § 513.430 RSMo. declares a debtor's "right to *receive,*" (emphasis added) *inter alia,* "a social security benefit" to be exempt.

**6.** Despite the principles stated in note 5, *supra,* any and all postpetition income would be "exempt" as against the trustee by reason of its first becoming property of the debtor after the commencement of the case. See note 3, *supra.*

**7.** See § 525.030(2) RSMo, which provides pertinently as follows:

"The maximum part of the aggregate earnings of any individual for any workweek, after the deduction from those earnings of any amounts required by law to be withheld,

which is subjected to garnishment may not exceed (a) twenty-five percentum, or, (b) the amount by which his aggregate earnings for that week, after the deduction from those earnings of any amounts required to be withheld by law, exceed thirty times the federal minimum hourly wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 [29 U.S.C.A. § 206] in effect at the time the earnings are payable, or, (c) if the employee is the head of a family and a resident of this state, ten percentum, whichever is less." It further defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments to a pension or retirement program."

**8.** See note 8, *supra.*

**9.** Thus, in the case at bar, on which the evidence showed the monthly take-home income to exceed the reasonable level of expenses by $400, reduction of that $1200 by 75% before comparing it with the monthly expense level would not permit a finding that there was any excess income.

proceedings could be considered to have an ability to pay his or her creditors, in whole or in part.

This court is therefore forced to conclude that § 707(b), *supra,* of the Bankruptcy Code is now a dead letter. It is therefore unnecessary to decide the difficult issue which was raised in this case of whether bankruptcy may lawfully and equitably be used to free oneself from former indebtedness so that he may purchase a new car and enter into a new marriage, as observed above, at the expense of his preexisting creditors. For *Brady, supra,* resolves the issue in this case as well as virtually all

others, in which there could be no way of demonstrating an ability to pay in light of the above principles.[10] The chapter 7 case must therefore be reinstated and processed to discharge.[11]

It is therefore

ORDERED that this court's former order of dismissal be, and it is hereby, vacated and set aside and the within chapter 7 proceedings are accordingly reinstated. Because the former dismissal may have come before creditors had an opportunity to object to discharge or file nondischargeability complaints,[12] it is hereby further

10. See note 9, *supra.*

11. The case at bar follows a trend that has been observed recently in *Matter of Richardson,* 85 B.R. 1008 (Bkrtcy.W.D.Mo.1988), for higher courts to conclude, if there is any palpable question, that powers which appear to be granted to the bankruptcy court in reality have not been so granted. See the opinion in that case to the following effect:

> *"The future of bankruptcy court functions.* This case appears to reflect a tendency to place controversies coming before the bankruptcy court in a 'noncore' rather than a 'core' category. As the decision in *In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281 (9th Cir.1987), graphically demonstrates, it is constitutionally the safer thing to do. (There is a potentially contrary holding in *L.A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541, 1548, n. 8 (11th Cir.1986), to the effect that: 'If a contempt proceeding were a core proceeding, the bankruptcy court could enter a final contempt order.' But that holding is in the subjunctive and *assumes* that a contempt action may be a core proceeding if an order entered by the bankruptcy court in a core proceeding is sought to be enforced.) But the rule has generally been followed that, in the event of any ambiguity, an action should be classified as a 'noncore' proceeding. *In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986) ('[A] court should avoid characterizing a proceeding as "core" if to do so would raise constitutional problems.') Further, this action appears to demonstrate the inefficacy of the bankruptcy court's making recommended findings of fact when the material issue to be determined is that of credibility. In those cases, use of the report-and-recommendation process, without the district court's conducting a new hearing on the issue, appears not only to offend the litigants' rights to an Article III trier of fact, but also to take little or no account of the ineffable character of a credibility determination. It appears

that, in most imaginable instances, the district court would have to conduct a *de novo* hearing prior to making the determination and that, in those instances, the bankruptcy court's meantime offering recommended findings of fact and conclusions of law will have only resulted in delay in rendering the final decision and a duplication of effort between the bankruptcy court and district court.

"If these considerations culminate in the district court's having to hear as well as determine these crucial matters affecting bankruptcy court operations, a workload balance between the district court and bankruptcy court might be achieved by local rules or orders of the district court which expand the bankruptcy court's jurisdiction to hear *and* determine cases which do not come within the prohibition of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 [102 S.Ct. 2858, 73 L.Ed.2d 598] (1982). As this court has previously observed, see notes 25 and 26, *supra,* decisional authority has limited the *Marathon* prohibition to (1) actions arising exclusively under state law and (2) actions to effectuate orders or judgments of the bankruptcy court. In a prior opinion, this court has demonstrated how, under section 151, Title 28, United States Code, the district court may expand the jurisdiction of the bankruptcy court to the hearing *and* determination of other types of actions, related or nonrelated, including securities cases, social security disability determinations, civil rights and virtually all other types of actions which neither involve private rights arising exclusively under state law or the effectuation or enforcement of bankruptcy court orders and judgments. See *Matter of Golden Gulf, Ltd.,* 73 .B.R. 685, 693, 694 (Bkrtcy.E.D.Ark.1987)."

12. The court began its § 707(b) process in this case before the time initially set for filing objections to discharge or dischargeability complaints had run out. Creditors may have therefore relied on this process not to file such complaints.

ORDERED that creditors be, and they are hereby, granted 30 days from and after the date of filing of this order in which to object to discharge or file nondischargeability complaints, or both. And it is further

ORDERED that the clerk of the bankruptcy court, in the absence of any timely-filed objection to discharge, process this case to discharge.