**In re Ronald Carlester WALTON, Appellant.**

**No. 86–2497.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1988.

Decided Jan. 19, 1989.

Rehearing and Rehearing En Banc Denied April 21, 1989.

Frank J. Niesen, Jr., St. Louis, Mo., for appellant.

Before McMILLIAN, FAGG, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Ronald Carlester Walton appeals the final decision of the District Court[1] affirm-

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and West-ern Districts of Missouri.

ing the Bankruptcy Court's[2] dismissal of his Chapter 7 petition for "substantial abuse" under amended 11 U.S.C. § 707(b). We affirm.

Walton, who had gone through bankruptcy in 1974, filed a Chapter 7 (liquidation) bankruptcy petition in July 1985. The Bankruptcy Court ordered a hearing under 11 U.S.C. § 707(b) to determine whether Walton's petition represented an abuse of Chapter 7. After the hearing, the court found discrepancies in Walton's income and expenditure schedules. The court further found that Walton's monthly income exceeded his monthly expenses by $218, and that this surplus could be used to pay off a substantial portion of his debts under a 60–month Chapter 13 reorganization plan. *See* 11 U.S.C. § 1322(c) (bankruptcy court "for cause" can approve plans which provide for payments during a period up to five years). Therefore, the court concluded that granting Walton relief would constitute a "substantial abuse" of Chapter 7 and dismissed his petition.

On appeal to the District Court, Walton argued that the Bankruptcy Court had improperly read a future income standard into section 707(b), and had failed to give effect to the last sentence of section 707(b) creating a presumption in favor of granting the requested relief. After reviewing the law, the court concluded that the essential factor in determining "substantial abuse" for purposes of section 707(b) was the ability of the debtor to pay a substantial portion of his debts under a Chapter 13 plan. The court then reviewed the record and found that Walton's total unsecured debt was $26,484 and that his monthly surplus was $497, which would allow him to make payments totaling almost $30,000 over the next five years under a Chapter 13 plan.

Because of Walton's ability to propose a workable Chapter 13 plan, the District Court affirmed dismissal of his Chapter 7 petition. *In re Walton,* 69 B.R. 150 (E.D. Mo.1986).[3]

Walton raises the same issues on appeal to this Court. Specifically, he argues that dismissal of a Chapter 7 petition on the ground that the debtor's disposable future income could fund a Chapter 13 plan conflicts with the express will of Congress that no one be forced into Chapter 13. Walton also argues that the legislative history of section 707(b) indicates that Congress specifically rejected a future income analysis for determining "substantial abuse." Walton's narrow interpretation of "substantial abuse" apparently would preserve Chapter 7 liquidation rights for any debtor who demonstrates "meaningful economic hardship." Appellant's Brief at 14. His own good faith filing, Walton maintains, plus the statutory presumption favoring relief, should prevent the dismissal of his petition. We disagree.

With the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Act), debtors no longer have unfettered access to voluntary Chapter 7 relief. Section 707 of the Bankruptcy Code, providing for the dismissal of Chapter 7 cases, was substantially amended by the addition of subpart (b):

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of

---

**2.** The Honorable Robert E. Brauer, United States Bankruptcy Judge for the Eastern District of Missouri (retired).

**3.** The disparity between the surplus monthly income figures determined by the Bankruptcy Court, $218, and the District Court, $497, is pointed out in the District Court opinion. *Walton,* 69 B.R. at 152. Walton does not discuss this disparity in his brief to this Court, but appears to assume that the lower figure is accurate. We have studied the calculations and

agree with the District Court that the higher figure is correct. Because the only serious dispute in this case is over the legal interpretation of the "substantial abuse" standard, not the precise amount of Walton's surplus monthly income, we proceed on the basis of the District Court's $497 surplus income figure without discussing our arithmetic. The amount of Walton's surplus monthly income can be determined anew by the Bankruptcy Court if Walton elects to seek protection under Chapter 13.

relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

Although the term "substantial abuse" is not defined in the Act, legislative history indicates that the amendments to the Code were aimed primarily at stemming the use of Chapter 7 relief by unneedy debtors. *See* S.Rep. No. 65, 98th Cong., 1st Sess. 3 (1983) ("the number of consumer bankruptcy cases filed each year has risen dramatically"). Requirements for a mechanical future income threshold test were deleted from earlier drafts of the proposed section 707(b) and replaced with the undefined term "substantial abuse."[4] Walton argues that this deletion, along with comments of opponents of the Act who characterized the deletion as a complete elimination of the future income issue, evidences Congress's intent that courts not consider future income in deciding whether to dismiss a case for "substantial abuse." *See* 129 Cong. Rec. S5387 (daily ed. April 27, 1983) (statement of Sen. Metzenbaum) ("the future income matter is no longer in the legislation"). We believe, however, that Walton reads too much into the legislative history of the Act.

"To the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent," not the "stray comments by individual legislators" on the floors of the House and Senate. *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912 n. 3 (9th Cir.1988) (citing *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984)). Statements by opponents of a bill shed little light on the intent of Congress in passing legislation. *See NLRB v. Fruit & Vegetable Packers, Local 760*, 377 U.S. 58, 66, 84 S.Ct. 1063, 1068, 12 L.Ed.2d 129 (1964); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 394–95, 71 S.Ct. 745, 750–51, 95 L.Ed. 1035 (1951). In this case,

there were no committee reports on the final version of the Act. Therefore, the report on an earlier draft, S. 445, although far from conclusive, "is the best available evidence of Congress's intent in enacting section 707(b)." *Kelly*, 841 F.2d at 914 n. 7. This report states that section 707(b) "upholds creditors' interests in obtaining repayment where such repayment would not be a burden" on the debtor. S.Rep. No. 65 at 53. "[I]f a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." *Id.* at 54. This language seems to anticipate that a court, in considering "substantial abuse" under section 707(b), will look to a debtor's ability to repay his creditors out of his future income. We believe that in deleting the mandatory future income threshold formula, Congress simply replaced a rigid test with a flexible "substantial abuse" standard that does not foreclose the courts from considering, *inter alia*, the debtor's ability to pay his debts out of his future income. *See Kelly*, 841 F.2d at 914.

 Walton argues essentially that Congress intended "substantial abuse" to mean nothing more than "bad faith." Certainly the court may take the petitioner's good faith and unique hardships into consideration under section 707(b). *See, e.g., In re Grant*, 51 B.R. 385, 393–94 (Bankr.N.D.Ohio 1985). But the cramped interpretation of section 707(b) that Walton advances would drastically reduce the bankruptcy courts' ability to dismiss cases filed by debtors who are not dishonest, but who also are not needy. And it would needlessly duplicate other provisions of the Code that have always required petitioners to file in good faith. Several sections enumerate specific abuses, *see, e.g.,* 11 U.S.C. § 523(a)(2) (the fraud or false pretense or false financial statement exception), and the absence of a laundry list of abuses in section 707(b) further suggests that the drafters did not intend a narrow interpretation of "substantial abuse." *Cf. In re Ed-*

---

**4.** This change may have been in response to vehement opposition to the legislation led by Senator Metzenbaum. *See* S.Rep. No. 65 at 90–

91; S.Rep. No. 446, 97th Cong., 2d Sess. 49, 57–63 (1982).

*wards,* 50 B.R. 933, 937 n. 3 (Bankr.S.D.N. Y.1985). Although the statute does not mandate a future income test, we are satisfied that it does not preclude the consideration of future income in giving meaning to the "substantial abuse" standard.

We note that almost all the courts that have interpreted the "substantial abuse" language of section 707(b) have concluded that this language encompasses consideration of the debtor's ability to pay his debts out of future income. *See, e.g., In re Gaukler,* 63 B.R. 224, 225 (Bankr.D.N.D. 1986); *In re Kress,* 57 B.R. 874, 878 (Bankr.D.N.D.1985); *In re Hudson,* 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985); *Grant,* 51 B.R. at 394; *Edwards,* 50 B.R. at 937–38.[5] In each of these cases the bankruptcy court decided that a crucial factor in determining "substantial abuse" was whether the debtor's future income could fund a repayment plan under the protections of Chapter 13.[6] *But see, e.g., In re Deaton,* 65 B.R. 663, 665 (Bankr.S.D. Ohio 1986) ("the mere ability to fund a Chapter 13 plan is not sufficient to constitute 'substantial abuse' ").[7] *Cf. In re Mastroeni,* 56 B.R. 456 (Bankr.S.D.N.Y.1985) (debtor ineligible for Chapter 13 relief because of debts exceeding the statutory maximum; debtor's Chapter 7 petition held not a "substantial abuse" under § 707(b)).

The bankruptcy courts' consideration of future income follows the analysis favored by most bankruptcy commentators. "The primary factor that may indicate substantial abuse is the ability of the debtor to repay the debts out of future disposable income." 4 *Collier on Bankruptcy,* ¶ 707.07, at 707–19 (15th ed. 1988). "Notwithstanding Senators Kennedy and Metzenbaum's disclaimer ['the future income test has been completely deleted,' S.Rep. No. 65 at 90], it is obvious that the primary, if not exclusive, focus of the court would be on the debtor's projected income and expenses as indicated on the schedules and the availability of that future income to pay off prepetition debts." Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse",* 59 Am.Bankr. L.J. 327, 347 (1985) (footnote omitted). *But see* Block–Lieb, *Using Legislative History to Interpret 1984 Amendments to Sections 548 and 707,* Norton Bankruptcy Law Advisor, No. 10 at 3 (Oct. 1986) ("Congress did not intend to limit Chapter 7 relief to individuals who cannot pay their debts out of future income").

Recently, the Ninth Circuit became the first court of appeals to focus on the meaning of "substantial abuse" under section 707(b). *Kelly,* 841 F.2d 908. *Kelly* discusses the future income issue thoroughly, and holds as follows:

> [T]he debtor's ability to pay his debts when due as determined by his ability to

---

**5.** Walton cites *Edwards* for the proposition that section 707(b) should operate only as a "type of motion to dismiss for failure to state a claim for relief." Brief of Appellant at 14. He suggests that "[s]imple application of the *Edwards* principal [sic]" precludes a finding of "substantial abuse." Appellant's Brief at 14. But appellant misreads the case. *Edwards* explicitly adopts the future income standard: "Both the legislative background to adoption of Code § 707(b) and the creditor protections against bankruptcy abuse long found in other sections of the Bankruptcy Code have caused the court to determine that the debtor's future ability to pay is the proper focus of Code § 707(b)." *Edwards,* 50 B.R. at 937 n. 3. *Edwards* states that debtors who could repay 90 or 100 percent of their debts in three years would be undeserving of Chapter 7 relief, but also notes that "in some cases, even considerably lower figures might suffice" to constitute "substantial abuse." *Id.* at 938 n. 6.

**6.** "Although Code § 707(b) may have the effect of relegating a debtor to Chapter 13 if he wants any bankruptcy relief, any decision to utilize Chapter 13 remains that of the debtor." *Edwards,* 50 B.R. at 939. *See* 11 U.S.C. § 706(c) (court may not convert Chapter 7 petition into Chapter 13 without debtor's request).

**7.** We note that a recent decision of a bankruptcy court in this circuit concludes that section 707(b) "is now a dead letter." *In re Antal,* 85 B.R. 838, 841 (Bankr.W.D.Mo.1988). We disagree with this conclusion for the reasons set forth in the present opinion, and we believe the position taken by the same bankruptcy court in *In re Brady,* Bankruptcy Case No. 86–020523 (Bankr.W.D.Mo. Jan. 22, 1987) (dismissing Chapter 7 petition under § 707(b) where debtor could fund a Chapter 13 plan out of future disposable income) represents the correct view of the law.

fund a chapter 13 plan is the primary factor to be considered in determining whether granting relief would be substantial abuse.... We find this approach fully in keeping with Congress's intent in enacting section 707(b).... This is not to say that inability to pay will shield a debtor from section 707(b) dismissal where bad faith is otherwise shown. But a finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse.

*Id.* at 914–15. Although the debtors in *Kelly* may not have acted in good faith and were in a higher income bracket than Walton, the arguments presented in that case and in this one on the future income issue are virtually identical. We agree with the reasoning and result of the Ninth Circuit on this issue, and we therefore hold that the courts below properly considered Walton's future income in applying the "substantial abuse" language of section 707(b).

■ The record establishes that Walton's monthly income is $1,818 and that his monthly expenses total $1,321. The monthly surplus of $497 would yield a yearly surplus of $5,964. The record also establishes that Walton's unsecured debts total $26,484. Thus, Walton could pay off more than two-thirds of his debts under a three-year plan. And in five years Walton's yearly surplus could repay 100 percent of his outstanding unsecured debt. *Cf. Grant,* 51 B.R. at 394 (Chapter 7 petition of debtors, who showed no resolve to tighten their belts or to incur debts with clear intent to pay their creditors, was denied for "substantial abuse" where debtors could repay 68 percent of their unsecured debt under a five-year plan). We conclude, as did the District Court, that these facts adequately rebut the statutory presumption in 11 U.S.C. § 707(b) in favor of granting the relief requested by the debtor.

The decision of the District Court is AFFIRMED.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I agree with the majority that debtors, after the enactment of the Bankruptcy Amendments and the Federal Judgeship Act of 1984, no longer have unfettered access to voluntary Chapter 7 relief because Section 707 of the Bankruptcy Code, providing for dismissal of Chapter 7 cases, was substantially amended by the addition of subpart (b):

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). However, I disagree with the majority that dismissal was appropriate in this case.

The bankruptcy court appears to have found appellant within the "substantial abuse" provisions of § 707(b) because:

> (a) he was $12,000 in arrears in house payments; (b) he had $218 left over every month, which could fund a Chapter 13 plan; and (c) he wasted his money probably by gambling.

*In re Walton,* No. 85–0129(1), slip op. at 4–7 (Bankr.E.D.Mo. April 4, 1986).

While "substantial abuse" is not defined in the act, the district court found the essential factor of "substantial abuse" to be "the feasibility of a payment plan under Chapter 13, U.S.C. § 1301 *et seq.*" *In re Walton,* 69 B.R. 150, 154 (E.D.Mo.1986). Indeed, the district court commented favorably upon the approach taken by several bankruptcy courts concerning a definition of "substantial abuse" and noted that the most important factor appears to be the ability of the debtor to pay a substantial portion of his or her debts in the future.

Here the bankruptcy court seemed to define "substantial abuse" two ways. The district court agreed only with the latter. First, the bankruptcy court seemed to be saying that if someone is a "spendthrift," i.e., does not manage money wisely prior to

bankruptcy, he or she is substantially abusing the Chapter 7 liquidation bankruptcy provision of the Bankruptcy Code. I reject this notion out of hand because nearly every person who files a Chapter 7 bankruptcy proceeding at some point in time could fairly be said to have managed his or her money unwisely. Second, the bankruptcy court appears to be saying that if after bankruptcy a debtor has any "discretionary" income, that is, income not earmarked for the ordinary expenditures of life, then the debtor could pay from future income some of his present debts, and that not doing so is "substantial abuse" of the Code. Therefore, the court reasons, the debtor must accept a Chapter 13 wage earner's plan or be denied relief. The district court agreed with the second definition.

Although Congress was under some pressure in 1984 by the consumer credit industry to adopt just such a provision, Congress did not. Instead, Congress maintained the position it has always had on Chapter 13 wage earner plans—that no one can or should be forced to utilize them (*see* 11 U.S.C. § 1301 *et seq.*). Indeed, after this case had been briefed in the district court, an article was written explaining the legislative history of 11 U.S.C. § 707(b), precisely because the term "substantial abuse" was not defined. The author explained and concluded therein:

> In [*In re*] *Bryant* [47 B.R. 21 (B.C.W.D. N.C., 1984)], [*In re*] *White* [70,677 BL Rep. (B.C.W.D.N.C., 1985)], [*In re*] *Grant* [51 B.R. 385 (B.C.N.D.Ohio, 1985)], and [*In re*] *Edwards* [50 B.R. 933 (B.C.S.D.N.Y., 1985)], Bankruptcy Courts interpreted the 1984 Amendments to § 707(b) that permit a court to dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief 'would be a substantial abuse of the provisions of this chapter.' Although § 707 does not define 'substantial abuse', the *White* Court presumed that Congress intended to accord the term its common meaning and it concluded that, while other factors may indicate abuse, '[a] large excess income amount or the ability to

pay a significant amount of such debts is, of course, considered indicative of substantial abuse.' The courts in the *Bryant*, *Grant* and *Edwards* decisions reached similar conclusions.

Reference to the circumstances surrounding the enactment of this provision would have made clear to these courts that Congress did not intend to limit Chapter 7 relief to individuals who cannot pay their debts out of future income when it amended § 707(b).

The language of new § 707(b) originated in S 1013 and S 445 as passed by the Senate. It, in part, was the result of negotiations between the proponents of that legislation and Senator Metzenbaum. Senator Metzenbaum vehemently opposed a provision in S 1013 and S 445, as introduced, that would have made Chapter 7 relief unavailable to consumers that are able to pay their debts out of future income. As a result of these negotiations, the future income requirement was deleted from the provisions of S 1013 and S 445 and replaced with language (similar to the language in § 707(b) as enacted) permitting a court to dismiss a Chapter 7 petition upon a showing of substantial abuse. See Rep No. 65 2–4, 90–91; 130 Cong Rec S5358 (daily ed. April 27, 1983) (remarks of Sen. Dole). S5359 (remarks of Sen. Thurmond), S5359–S5361 (remarks of Sen. Metzenbaum). As the Senate passed S 1013 and S 445, as thus revised, Senator Metzenbaum made clear his understanding that he had 'successfully worked out with the author of this amendment the total elimination of the future income language ... [T]he future income matter is no longer in the legislation.' 130 Cong Rec S5361, S5387–S5388 (daily ed. April 27, 1983) (remarks of Sen. Metzenbaum). Similar remarks were made by Senators Thurmond and Dole at this time. Id. at S5359 (daily ed. April 27, 1983) (remarks of Sens. Thurmond and Dole).

The House-passed version of HR 5174 contained an amendment to § 707(b) that resembled the substantial-abuse lan-

guage in S 1013 and S 445. Compare HR 5174, § 212, 98th Cong, 2d Sess with S 1013, § 530 and S 445, § 230, 98th Cong, 1st Sess. In the debate that preceded enactment of HR 5174 by the House, neither Rep. Rodino nor Rep. Synar, the proponents of the consumer credit industry provisions of that bill, remarked as to Congress' intent in the meaning of the amendments made to § 707(b), except to restate the language of this provision. Apparently to correct comments inserted to the record of the debate on HR 5174 by individual congressmen after consideration and passage of the bill, see, e.g., 130 Cong Rec H1811 (daily ed. March 21, 1984) (remarks of Rep. Brooks); id. at H1812 (remarks of Rep. Montgomery); id. at H1823 (remarks of Rep. Daub); id. at H1831 (remarks of Rep. Anthony); id. at H1832 (remarks of Rep. Brown), Chairman Rodino later stated in the Congressional Record that the proposed amendment to § 707(b) 'would not create a future income test.' 130 Cong Rec H1941 (daily ed. March 26, 1984).

The amendment to § 707(b) contained in the Senate-passed version of HR 5174 was identical to the language passed by the House. As the Conference Report on HR 5174 was adopted by the Senate, Senator Metzenbaum noted that 'both the House and Senate have agreed to the total elimination of the future income language. Under HR 5174, the availability of bankruptcy relief would not be limited by future earnings standard.' 130 Cong Rec S7624 (daily ed. June 19, 1984). Moreover, Chairman Rodino remarked during consideration in the House of the result of the conference on HR 5174 that 'the conferees did not alter the consumer credit amendments. These amendments are fair to both debtors and creditors, and contain no threshold or future income test.' 130 Cong Rec H7489 (daily ed., June 29, 1984).

*Block–Lieb, Using Legislative History to Interpret 1984 Amendments to §§ 548 and 707,* Norton Bankruptcy Law Advisor, October, 1986, No. 10.

Therefore the express intent of Congress with the enactment of § 707(b) was not to impose a future income test. To rule that Chapter 13 is the only way out where there is some disposable income after bankruptcy is to thwart and circumvent the express will of Congress that no one can be forced into Chapter 13 and that 11 U.S.C. § 707(b) is not meant to establish a "future income" test for "substantial abuse."

Finally, both the bankruptcy court and the district court ignored the fact that the final sentence of 11 U.S.C. § 707(b) reads:

There shall be a presumption in favor of granting the relief requested by the debtor.

This sentence means that there is a presumption that appellant should be allowed to complete his Chapter 7 case. This presumption would appear to give weight to the debtor's own evaluation of his finances and his need to go through a Chapter 7 liquidation bankruptcy. After all, no one really wants to be bankrupt and it is only after financial disaster strikes that anyone would seek to give up and be branded with the stigma of bankruptcy. Here neither court gave any credence, or so much as discussed the presumption to be afforded appellant that his case is not a "substantial abuse."

Moreover, the bankruptcy court indicated that factors other than a "future income" test which may be relevant to "substantial abuse ... do not militate strongly either for or against dismissal of the debtor's petition." Therefore, the presumption should stand and the debtor be allowed to complete his case.

The appellant herein has had more than his share of mishaps: he has been ill; his wife has been ill; he and his wife have separated and then been reunited; his home has been vandalized; his paycheck has sometimes been little more than $100 per week because of garnishments and offsets. Yet, the majority opinion of this panel, despite appellant's wretched financial conditions, would deny him a fresh start through a Chapter 7 liquidation bankruptcy. Such a conclusion is so result-oriented as to do violence to the spirit of the entire Bankruptcy Code.

Consequently, I would reverse the judgment and decision of the district court.