**In re Ronald Moses HARRIS and Rhonda Joann Harris, Debtors.**

**UNITED STATES TRUSTEE, Appellant,**

v.

**Ronald M. and Rhonda J. HARRIS, Appellees.**

**No. CIV 91–4015.**

United States District Court, D. South Dakota, S.D.

March 27, 1991.

Charles L. Nail, Jr., Asst. U.S. Trustee, Sioux Falls, S.D.

James A. Craig, Craig & Nichols, Sioux Falls, S.D., for debtors.

## AMENDED MEMORANDUM OPINION and ORDER

JOHN B. JONES, Chief Judge.

### Introduction

The U.S. Trustee (the UST) appeals Judge Ecker's denial of its motion to dismiss the Harris's (the debtors or, individually, Rhonda and Ron) Ch. 7 petition for substantial abuse under § 707(b). *In re Harris*, 122 B.R. 744 (Bkrtcy.D.S.D.1990).

### Jurisdiction

This Court takes jurisdiction over this matter pursuant to 28 U.S.C. § 158(a).

### Standard of Review

This Court shall review the decisions of law of the bankruptcy court *de novo* (*Matter of Newcomb*, 744 F.2d 621, 625 (8th

Cir.1984).), and findings of fact shall be upheld unless clearly erroneous (Bankruptcy Rule 8013.).

## BACKGROUND

The debtors filed a voluntary petition under Ch. 7 on 2 April 1990. Rhonda is a high school graduate with two years of college but has no specialized marketable skill. Ron is a fireman. The debtors have one child, Ron has two children from a previous marriage. Ron's two children live in St. Louis; Ron pays child support.

In 1989, the debtors had their income tax refund withheld because Rhonda had defaulted on a student loan. Rhonda testified that her father told her that he had paid her student loans, and that the income tax garnishment was the first notice that the loan was outstanding.

In an effort to pay the loan Rhonda took a night job at John Morrell & Co. The debtors testified that they were struggling to keep up with their obligations until a judgment creditor began garnishing Rhonda's wages at the rate of $80.00 per week.

The debtors testified that Rhonda's nighttime employment was causing strife within the family because Rhonda wished to spend more time with her child and because the debtors wished to spend more time together. Rhonda testified that she voluntarily resigned from her employment at John Morrell in January 1991 for the good of her family.

The debtors' Schedule of Current Income and Current Expenditures states that the debtors have a net monthly income of $2,249.00 (This is before Rhonda quit her job.). The debtors' monthly expenses are $1,973.00, which leaves the debtors a disposable income of $276.00 per month. At the hearing on the UST's motion, a bankruptcy analyst testified, and the bankruptcy court found, that the debtors were over withholding by at least $200.00 per month. It was also revealed that Ron had received a raise amounting to a net $60.00 per month. The bankruptcy court made no mention of Ron's raise.

Judge Ecker found that, although this additional income would give the debtors significantly greater disposable income, he believed that the debtors had not allocated enough for food each month.

The Court finds that a $200 adjustment to Debtors' food expense is appropriate given Debtors' family status. Debtors' original $400 claim is insufficient considering that five, and soon six, family members must be fed.

The bankruptcy court then stated that this *sua sponte* $200.00 increase in the debtors' monthly expenses would offset the increased income from proper tax exemptions.

The bankruptcy court then denied the UST's motion to dismiss stating that the debtors had made a good faith effort to pay their bills, had filed bankruptcy only as a last resort, and could only pay slightly more than fifty percent of their unsecured debt in a three year plan.

## ISSUES

1. WHETHER THE BANKRUPTCY COURT ERRED IN HOLDING THAT TO PREVAIL ON A MOTION TO DISMISS FOR "SUBSTANTIAL ABUSE" UNDER 11 U.S.C. § 707(b), THE MOVING PARTY MUST ESTABLISH "EGREGIOUS BEHAVIOR" ON THE PART OF THE DEBTOR.

2. WHETHER THE BANKRUPTCY COURT ERRED IN HOLDING THAT IN CONSIDERING A MOTION TO DISMISS FOR SUBSTANTIAL ABUSE IT SHOULD ONLY LOOK TO A DEBTOR'S ABILITY TO FUND A THREE YEAR PLAN.

3. WHETHER THE BANKRUPTCY COURT ERRED IN HOLDING THAT, IN THE CONTEXT OF A MOTION TO DISMISS FOR SUBSTANTIAL ABUSE, A DEBTOR'S ABILITY TO REPAY 56% OF HIS UNSECURED DEBT OVER A THREE YEAR PERIOD DOES NOT REPRESENT A "SIGNIFICANT" REPAYMENT OF UNSECURED DEBT.

### 4. WHETHER THE BANKRUPTCY COURT ERRED IN CALCULATING THE DEBTORS' DISPOSABLE INCOME.

### DISCUSSION

I. *Whether the bankruptcy court erred in holding that to prevail on a motion to dismiss for "substantial abuse" under 11 U.S.C. § 707(b), the moving party must establish "egregious behavior" on the part of the debtor.*

The bankruptcy court committed error in requiring a showing of egregious behavior. The bankruptcy court held

> that substantial abuse *requires* something more than the naked ability of a debtor to repay a significant amount of unsecured debt under a three year Chapter 13 plan. Egregious behavior, such as repeated bankruptcy filings evidencing a lack of good faith, fraud, impropriety or evidence of misconduct, *must* be established by the moving party in addition to proving that a significant portion of unsecured debt may be paid by net disposable income under a three year Chapter 13 plan.

*Memorandum Decision*, 122 B.R. 744, 747 (Bkrtcy.D.S.D.1990).

Such a conclusion is clearly contrary to the law of the Eighth Circuit.

Both parties agree that the law on this issue is *In re Walton*, 866 F.2d 981 (8th Cir.1989). The *Walton* court stated

> His own good faith filing, Walton maintains, plus the statutory presumption favoring relief, should prevent the dismissal of his petition. We disagree....
>
> Recently, the Ninth Circuit became the first court of appeals to focus on the meaning of "substantial abuse" under 707(b). *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908 (9th Cir.1988). *Kelly* discusses the future income issue thoroughly, and holds as follows:
>
> > [T]he debtor's ability to pay his debts when due as determined by his ability

to fund a chapter 13 plan is the primary factor to be considered in determining whether granting relief would be substantial abuse.... We find this approach fully in keeping with Congress's intent in enacting section 707(b).... This is not to say that inability to pay will shield a debtor from section 707(b) dismissal where bad faith is otherwise shown. But *a finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse.*

> We agree with the reasoning and result of the Ninth Circuit on this issue[.]

*In re Walton*, 866 F.2d at 982, 984 (emphasis added.).

The *Walton* court clearly contemplates that the ability to fund a chapter 13 plan can be sufficient reason to dismiss a chapter 7 petition under § 707(b).

> Although the term "substantial abuse" is not defined in the Act, legislative history indicates that the amendments to the Code were aimed primarily at stemming the use of Chapter 7 relief by *unneedy* debtors.

*Id.*, at 983 (emphasis added).

In this regard the bankruptcy court, by requiring "egregious behavior" on the part of the debtors, has disregarded the law of the Eighth Circuit. As the *Walton* court stated

> [This] cramped interpretation of section 707(b) ... would drastically reduce the bankruptcy court's ability to dismiss cases filed by debtors who are not dishonest, but who also are not needy.

*Id.* at 983.

The bankruptcy court, and the debtors, attempt to distinguish *Walton* on the basis of what they perceive to be bad faith actions by Mr. Walton. However, the factors they point to were not important to the Eighth Circuit's holding because the *Walton* court clearly considered Mr. Walton to be a good faith debtor.[1] *See Walton*, 866 F.2d at 982, 983, 985.

---

**1.** Or, more probably, to establish a rule of law the Eighth Circuit worked from the assumption

that Mr. Walton was a good faith debtor without ever making a finding on the issue. But it is

The *Walton* court stated, "Certainly the court may take the petitioner's good faith and unique hardships into consideration under section 707(b)." *Id.* at 983. The *Walton* decision was an effort to increase the bankruptcy court's ability to make case-by-case determinations of substantial abuse. "[T]he absence of a laundry list of abuses in section 707(b) further suggests that the drafters did not intend a narrow interpretation of 'substantial abuse.'" *Id.* at 983.

■■■ The law of the Eighth Circuit, as established by *In re Walton*, is that the bankruptcy court must consider the debtor's ability to pay a substantial portion of his unsecured debts through a chapter 13 plan as the primary consideration under § 707(b). The ability of the debtor to pay a substantial portion of his unsecured debt under a chapter 13 plan is, in itself, sufficient grounds to dismiss the chapter 7 petition for substantial abuse. However, the bankruptcy court may also consider the debtor's good faith and unique hardships, so that the bankruptcy court is not required to dismiss a debtor's chapter 7 simply because the debtor has the naked ability to fund a chapter 13 plan.

This rule conforms with the plain language of *In re Walton*, the statutory presumption in favor of granting relief, and it is also compelled by logic. If § 707(b) required bad faith or other "egregious behavior" on the part of the debtor it would be meaningless because § 105(a) and § 707(a) already provide a bankruptcy court with the power to dismiss a debtor for bad faith actions. Section 707(b) must mean something that § 105(a) and § 707(a) do not.

II. *Whether the bankruptcy court erred in holding that in considering a motion to dismiss for substantial abuse it should only look to a debtor's ability to fund a three year plan.*

·■ The bankruptcy court's decision stated that

While *Walton* examined repayment ability under a three and a five year plan, the statutory assumption is that all plans

clear that the Eighth Circuit intended this rule

shall be three years in duration unless just cause exists. 11 U.S.C. § 1322(c). Ascertaining the amount of disposable income, as defined by 11 U.S.C. § 1325(b), to pay unsecured creditors for substantial abuse purposes primarily contemplates a three year hypothetical plan. *Memorandum Decision* at 746–47.

It is clear that, in the Eighth Circuit, the bankruptcy court should look at the debtors ability to fund a chapter 13 plan—both a three year and a five year plan.

IV. *Whether the bankruptcy court erred in calculating the debtors' disposable income.*

■ Because of its necessary affect on the discussion of issue III, issue IV will be discussed first.

In arriving at the debtors' disposable income the bankruptcy court relied upon clearly erroneous findings, relied upon facts not in the record, disregarded relevant facts in the record, and made findings unsupported by evidence. The bankruptcy court's calculation of debtor's disposable income is clearly erroneous.

The bankruptcy court *sua sponte* increased debtors' monthly expenses by $200.00. As I noted above, the bankruptcy court stated

The Court finds that a $200 adjustment to Debtors' food expense is appropriate given Debtors' family status. Debtors' original $400 claim is insufficient considering that five, and soon six, family members must be fed.

*Memorandum Decision* at 745.

Initially, the assumed information is clearly erroneous; the debtors have one child and are, therefore, a family of three. The reference, "soon six," is not supported in the record. Debtors signed and declared under penalty of perjury that they had reviewed and properly stated their monthly expenses. The bankruptcy court committed clear error by inflating the debtors' expenses.

The debtors also have income that the bankruptcy court did not consider. Initial-

to apply to good faith debtors.

ly, the bankruptcy court did not consider Ron's raise. This raise would increase the debtors' monthly income by an additional $60.00. Additionally, the UST points out that, although the debtors listed their monthly child care expense as $240.00, Rhonda testified that the highest that these expenses ran was $230.75, and were as low as $200.42.[2] This leaves an overstatement in the debtors' monthly expenses of $9.25 to $39.58.

Adjusting the bankruptcy court's findings to reflect these amounts gives the debtors a net monthly disposable income of $421.25 (bankruptcy court's finding ($152) + erroneous increase in expenses ($200) + Ron's raise ($60) + overstated child care ($9.25)). This disposable income will enable the debtors to pay approximately 156 percent of their unsecured debt over three years. The debtors also spend $175.00 per month on recreation and charity.

III. *Whether the bankruptcy court erred in holding that, in the context of a motion to dismiss for substantial abuse, a debtor's ability to repay 56% of his unsecured debt over a three year period does not represent a "significant" repayment of unsecured debt.*

■ The *Walton* court found that the ability to repay two-thirds of a debtor's unsecured debt over three years, or 100 percent over five years, constituted a substantial abuse.[3] Finding that the debtors have the ability to repay 155.77 percent of their unsecured debts over three years, they clearly fall within the Eighth Circuit's definition of substantial abuse. Hence, this Court need not address issue III.

*Constitutionality of § 707(b)*

■ Debtors raise, for the first time, the question of § 707(b)'s constitutionality. Because the debtors did not raise this issue below they begin their brief by citing *In re Stratton*, 23 B.R. 284 (D.S.D.1982). *Strat-*

*ton* stated that new legal theories could be raised on appeal provided that the factual basis for the theory was contained in the record. *Id.*, at 288. The vitality of *Stratton* must be called into question in light of *In re Ozark Restaurant Equipment Co., Inc.*, In *Ozark* the Eighth Circuit stated that, "As a reviewing court the district court is not empowered to consider an issue not raised in the bankruptcy court." *In re Ozark*, 850 F.2d 342, 346 (8th Cir.1988). This Court is not empowered to consider the issue of constitutionality.

ORDER

Upon the record herein and the foregoing,

IT IS ORDERED:

(1) That the Bankruptcy Court's Order of December 24, 1990 is reversed.

(2) That this action is remanded to the Bankruptcy Court with instructions to dismiss debtor's petition.

---

**2.** My calculations from Rhonda's testimony are not even that high. I calculated her highest child care expense to be $213 per month. *Hearing Transcript* page 28 line 12 to page 30 line 6.

**3.** *Walton* also cited with approval the case of *In re Grant*, 51 B.R. 385 (Bkrtcy.N.D.Ohio 1985) which found that the ability to repay 68 percent over 5 years was substantial abuse. *Walton*, 866 F.2d at 985.