**In re William Albert PALMER, Debtor.**

**Bankruptcy No. L–90–00181W.**

United States Bankruptcy Court,
N.D. Iowa.

June 8, 1990.

L. Don Snow, Cedar Falls, Iowa, for debtor.

Robert Cowie, Jr., Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, Iowa, for Beverly Palmer.

Donna Lesyshen, Waterloo, Iowa, Chapter 7 Trustee.

## ORDER DISMISSING CASE

MICHAEL J. MELLOY, Chief Judge.

On May 24, 1990, the Court held a hearing on possible dismissal of the Debtor's case under 11 U.S.C. § 707(b). The Debtor appeared with his attorney, L. Don Snow. The U.S. Trustee and Chapter 7 Trustee were both given notice of the hearing but did not attend or participate in the proceeding.

The Court, having examined the Debtor and having heard the evidence and arguments of counsel, enters the following findings of fact, conclusions of law and order.

## FINDINGS OF FACT

1. On November 13, 1989, a Decree of Dissolution of Marriage was entered in the Iowa District Court in and for Black Hawk County, dissolving the marriage of the Debtor, William A. Palmer, and his wife, Beverly A. Palmer. In the Decree of Dissolution of Marriage, the Debtor was awarded certain property, including his IP-ERS benefits valued at $20,000, residence and real estate, farm machinery, crops and grain. Beverly A. Palmer was awarded a cash lump sum settlement of $24,000, which sum "represents one-half of the appreciated value of the parties residence, real estate, machinery and grain, during the course of the marriage as well as the amount the respondent [Beverly A. Palmer] would be entitled to share in the petitioner's [William A. Palmer] retirement benefits." The Decree went on to provide how the $24,000 lump sum settlement was to be paid.

2. The Decree of Dissolution of Marriage made no reference to what lien rights, if any, Beverly Palmer may have in the property owned by the Debtor, in order to secure the payment of the $24,000 lump sum award. A motion to lift the automatic stay to allow Beverly Palmer to return to the Iowa District Court in order to have those lien rights adjudicated is the subject of a separate motion for relief from stay filed by Beverly A. Palmer. In this ruling, the Court is making no determination as to what lien rights, if any, Beverly A. Palmer may have against the property of the Debtor by virtue of the judgment which was entered by the Iowa District Court in the dissolution of marriage action.

3. Debtor's bankruptcy petition was filed on February 2, 1990. The schedules of assets and liabilities show that the Debtor has property totalling $86,565 and debts totalling $35,018.36. All of the debt is listed as unsecured. The Debtor testified that there are no liens against any of his property, except whatever lien rights Beverly A. Palmer may have acquired through the dissolution of marriage decree.

4. Two debts listed on schedule A–3 make up more than 90% of the total indebtedness. Those two debts are a debt owed to Albert Palmer, the Debtor's father, in the sum of $7,930 and the $24,000 debt owed to Beverly Palmer. The Debtor testified at the hearing that some of the smaller debts listed on schedule A–3 have been paid in full or in part. At the same time, the Debtor has borrowed more money from his parents in order to plant his 1990 crops.

The most significant items of property on the Debtor's schedules are the Debtor's homestead valued at $58,000, and Debtor's IPERS pension, valued at $19,000. Debtor has claimed exemptions for all of the property listed on his schedules, valued at $86,-565. The summary of debts and property shows that the assets exceed debts by more than $50,000.

5. The Court finds that the Debtor's schedule of income and expenses filed with his bankruptcy petition does not accurately reflect Debtor's net disposable income. Debtor shows that he receives monthly income totalling $1,432.64. This sum represents the net take home pay he receives from his job with Black Hawk County, Iowa, plus a small amount of investment income. The Debtor does disclose that he receives income between $3,000 and $6,000 a year from farming, but he does not include any figure for the farming income in his total income computation. However, in computing Debtor's expenses, he does include $525 per month for farm expenses. A review of Debtor's tax return shows that in 1988 he reported gross cash income of $13,667.80 from farming on schedule F, expenses of $6,303.39, and net farming income of $7,364.51. In 1989, which the Debtor testified was a bad year, schedule F shows gross income of $9,767.52, farm expenses of $5,964.80, and net income of $3,802.72. It should be noted that the Iowa District Court found in the dissolution of marriage action that the Debtor netted $500 per month income from his farm operation. If the Debtor is going to include the farm expenses in his schedule of expenses, the Debtor should also include the gross farm income on the income side of the ledger. Based upon the evidence and testimony and the Debtor's

income tax returns, the Court finds that the Debtor can reasonably expect to gross $1,000 per month income from the farm operation. If the Debtor is to include in his expenses $525 per month for farm expenses, then the income side of the ledger should be increased by $1,000 to reflect the gross income. The financial statement filed by the Debtor shows that his gross income, without farm income, is roughly equivalent to his monthly expenses, including $525 per month for farm expense. Thus, if the farm income is included on the income side of the ledger, there should be $800 to $1,000 per month net disposable income which could be paid to a Chapter 13 Trustee if this case were filed under Chapter 13.

6. The Debtor's debts are primarily consumer debts.

7. The Court finds that this bankruptcy petition was filed principally by the Debtor in an attempt to avoid payment of the lump sum award made by the Iowa District Court to the Debtor's former spouse. It should be noted that the Debtor has not made any payments on that lump sum award. He does not appear to have made any sincere effort to try to raise the money to make any of the payments, and he has indicated that he will not use his home as collateral for a loan to make that payment.

## DISCUSSION AND CONCLUSIONS OF LAW

Under 11 U.S.C. § 707(b) the court may dismiss a case if it finds that the debts of the debtor are primarily consumer debts and that the granting of relief would be a substantial abuse of the provisions of chapter 7.[1] The two central issues in this case are whether the debts, including the lump sum award made under the dissolution of marriage decree, are consumer debts, and whether there has been substantial abuse.

### A. Consumer Debt Requirement

11 U.S.C. § 101(7) defines a consumer debt as: "debt incurred by an individual primarily for a personal, family, or household purpose." If the debt owed by the Debtor to his former spouse is classified as a consumer debt, then clearly Debtor's debts are primarily consumer debts. On the other hand, if $24,000 of the $35,018.36 total debt is determined to be non-consumer debt, then the requirement of § 707(b) that the debtor have primarily consumer debt is not met.

In determining whether a particular debt is a consumer debt, the courts have held that the court must look to see the purpose for which the debt was incurred. If the credit transaction involves a profit motive, then it is not a consumer debt. On the other hand, if a debt does not involve a business transaction or potential profit motive, then the debt is ordinarily considered a consumer debt. *Matter of Booth*, 858 F.2d 1051, 1054–1055 (5th Cir. 1988).

The Court has not been able to find any cases which deal precisely with the issue of whether a lump sum award made in a dissolution of marriage proceeding is a consumer debt. The Court has found one case which dealt with a very similar fact situation, but the issue of whether the debts were primarily consumer debts was not addressed. In the case of *In re Shands*, 63 B.R. 121 (Bankr.E.D.Mich. 1985), the debtor had very few creditors. More than 50% of the debtor's indebtedness was represented by a debt owed to a former spouse pursuant to a dissolution of marriage action. The court in that case found that the chapter 7 had been filed out of "spite" in an attempt to allow the debtor to avoid paying his former spouse the lump sum award made by the divorce court. The *Shands* court also found that the debtor had sufficient net disposable income to pay

1. Section 707(b) reads as follows:
    After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter

whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

the lump sum award and all other debts in a chapter 13 plan in thirty three months. The court went on to dismiss the case as involving substantial abuse under those facts. It should be noted, however, that there was no discussion in the case of whether the debtor met the test of having primarily consumer debts. The court must have assumed that the lump sum award by the divorce court constituted consumer debt, since more than 50% of the total indebtedness was represented by the lump sum award.

This Court concludes that by applying the test of whether the debt is incurred principally for a profit motive, the lump sum award made by the Iowa District Court in this case is a consumer debt. It is clear from the dissolution of marriage decree that the debt was created in order to allow the Debtor to retain ownership of the home, live in that home, and retain his IPERS pension. Those two assets, which are unencumbered, are valued by the Debtor at $77,000 and constitute 89% of Debtor's total assets. The debt was not created for any profit motive. There was no business venture involved in equalizing the distribution of property which was represented by the house and IPERS fund. Rather, the debt was created in order to allow the Debtor to retain his homestead.

■ The Iowa District Court could have ordered the homestead sold and the proceeds distributed between the properties, in which case the Debtor would have had to incur a similar debt with a lending institution to pay off his ex-wife's interest in the marital property. Given the nature of the marital property awarded to the Debtor, the lump sum award is in the nature of a debt incurred to finance the retention of a home. Debts incurred to purchase, finance, or improve a home are consumer debts. *In re Kelly*, 841 F.2d 908, 912–913 (9th Cir.1988); *In re Wegner*, 91 B.R. 854, 857 (Bankr.D.Minn.1988). Thus, the Court concludes that the debt was incurred principally in order to allow the Debtor to retain the homestead, and therefore the debt qualifies as a consumer debt.

## B. Substantial Abuse

■ The Eighth Circuit has discussed the issue of substantial abuse under 11 U.S.C. § 707(b) in the case of *In re Walton*, 866 F.2d 981 (8th Cir.1989). Applying the factors set forth by the *Walton* court leads this Court to conclude that this case should be dismissed for substantial abuse.

The Court would first note that the Debtor was not entirely candid in the manner in which he set out his income and expenses. The Court discussed in the Findings of Fact the failure to include Debtor's farm income in the total income figure or his statement of earnings and expenses while his farm expenses were included. The Court believes that the Debtor may be entitled to some increase in his expenses for such items as transportation and allowance for replacement of his auto. However, taking all the factors into consideration, the Court concludes that out of the additional $1,000 per month farm income generated by the Debtor, he should be able to pay at least $700 per month towards the funding of a Chapter 13 plan. Under a three-year plan, this would mean total payments to the Trustee of $25,200. Deducting the Trustee's ten percent fee would leave $22,700 payment to unsecured creditors, for a dividend of approximately 65%. Under a five year plan, the Debtor would pay in $42,000. Deducting the ten percent Trustee fee would leave $37,800, which would result in a 100% dividend plan. A similar ability to fund a chapter 13 plan was one of the grounds the Court found for dismissal for substantial abuse in the *Walton* case. *See,* 866 F.2d at 985.

The Court believes there are other factors which demonstrate that dismissal is warranted in this case. While the Court recognizes the right of the Iowa Legislature to establish exemptions, the Court is troubled by the fact that a debtor can file a chapter 7 case, discharge $35,000 of unsecured debt, and exit from the chapter 7 case with $86,000 of exempt property. This is not a truly needy debtor who needs the benefit of a fresh start in bankruptcy. *See, In re Walton*, 866 F.2d at 983. Rather, this is a debtor who seeks to use the

federal bankruptcy laws and Iowa exemption statutes to abuse the system and emerge from bankruptcy debt-free while retaining $86,000 of unencumbered assets.

The Court also believes that the Debtor's motivation in filing this case is suspect. It appears to the Court that the Debtor is attempting to use the bankruptcy to circumvent the dissolution of marriage decree. The Court is convinced that this is similar to the case of *In re Shands*, 63 B.R. 121 (Bankr.E.D.Mich.1985). The *Shands* court dismissed a chapter 7 case for substantial abuse when it found the debtor was motivated by "spite" towards a former spouse. It is clear to this Court that the Debtor's only motivation in filing this case was an attempt to avoid paying his former spouse the amounts the Iowa District Court had previously determined are legitimately owed.

In conclusion, the Court finds that for all of the reasons stated, this case should be dismissed for substantial abuse under 11 U.S.C. § 707(b).

## ORDER

IT IS THEREFORE ORDERED that the case is dismissed for substantial abuse.

DONE AND ORDERED.