**In re Steven Jacob TRAUB, SS # 585–30–9134, aka Steven J. Traub, and Pamela Joan Traub, SS # 525–21–8421, aka Pamela J. Traub, fka Pamela Joan Sandoval, Debtors.**

Bankruptcy No. 7–90–02255 M A.

United States Bankruptcy Court, D. New Mexico.

May 20, 1992.

Carol M.G. Clark, Albuquerque, N.M., for debtors.

Leonard Martinez–Metzgar, Asst. U.S. Trustee, Office of the U.S. Trustee, Albuquerque, N.M.

Robert H. Jacobvitz and Kelley L. Skehen, Albuquerque, N.M., for LeQuieu.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for final hearing on the United States Trustee's motion to dismiss under 11 U.S.C. § 707(a) or, alternatively § 707(b)[1], filed September 20, 1991. The Court considered the § 707(b) motion first as it was potentially dispositive of the entire motion. Having considered the testimony of the witness, arguments of counsel, case law, exhibits and memoranda of law submitted by the parties, and being otherwise fully informed and advised, the Court finds the motion is well taken and will be granted, and thus need not consider the § 707(a) motion.

### FACTS

The debtors, Steven J. Traub, an oral surgeon, and Pamela J. Traub, originally filed for bankruptcy under chapter 11 but subsequently converted the case to a proceeding under chapter 7. The debtors had put forward a chapter 11 plan which would pay all creditors except Mary Ann LeQuieu (LeQuieu), Traub's former wife, 100% of their claims. The chapter 11 plan provided that LeQuieu was to only receive 10% of her claim of nearly $300,000. On September 20, 1991, the U.S. Trustee filed a motion to dismiss the debtors' chapter 7 case under § 707(b). The debtors list debts totaling approximately $948,736.32.

### ISSUES

I.   *Whether the debts listed by the debtors are primarily consumer debts for the purpose of 11 U.S.C. § 707(b).*

II.   *Whether the granting of relief would be a substantial abuse of the provisions of chapter 7.*

### BRIEF ANSWERS

To make a determination under § 707(b), the Court must first determine whether the

---

1.  Unless otherwise noted, all statutory citations refer to title 11.

debts are primarily consumer debts. If so, the Court can then move to the question of substantial abuse.

The debtors' debts are primarily consumer debts, both in number and by amount, as required by § 707(b). The combined debt is $948,736.32 and the number of debts is 11, counting the Internal Revenue Service debt as two debts. The debts are classified as follows:

Consumer debts:

| | | |
|---|---|---|
| 1. | Traub, DDS, PA | $269,375.20 |
| 2. | First Nat. Bank | 8,684.14 |
| 3. | GMAC | 22,292.37 |
| 4. | LeQuieu | 220,993.00 |
| 5. | Leech | 336.57 |
| 6. | Security Pacific | 139,234.94 |
| | | $660,916.22 |

Non-consumer debts:

| | | |
|---|---|---|
| 1. | New Mexico Tax & Rev. | $ 43,941.42 |
| 2. | IRS delinquent | 174,770.74 |
| 3. | IRS 100% penalty | 31,315.33 |
| 4. | Matt Cohen | 18,000.00 |
| 5. | MBNA | 19,792.61 |
| | | $287,820.10 |

The granting of relief would be a substantial abuse of the provisions of chapter 7 because the evidence presented shows that the debtors continue to live a lavish and excessive lifestyle without regard to the interests of their creditors and the debtors have the ability to pay their debts.

## DISCUSSION

*I.  Whether the debts listed by the debtors are primarily consumer debts for the purpose of 11 U.S.C. § 707(b).*

Section 707(b) states that "the court, on its own motion or on a motion by the United States Trustee, ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts...." § 707(b). The threshold question before the Court is whether the debts are primarily consumer debts. The Code defines a consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose." § 101(8) (1992). The courts have refined the procedure for determining whether a debt is a consumer debt. To determine a debt's classification, the court "must look to the purpose of the debt in determining whether it falls in the statutory definition."

*In re Kelly,* 841 F.2d 908, 913 (9th Cir. 1988). The court in *Kelly* further stated, "[d]ebt incurred for business ventures or other profit-seeking activities is plainly not consumer debt for purposes of section 707(b)." *In re Kelly,* 841 F.2d at 913, *citing In re Bell,* 65 B.R. 575, 577 (Bankr. E.D.Mich.1986). The Tenth Circuit concluded that "a credit transaction is not a consumer debt when it is incurred with a profit motive." *In re Burns,* 894 F.2d 361, 363 (10th Cir.1990).

■ The Court will first consider the debts owed to the taxing agencies. The New Mexico Taxation and Revenue Department is owed $43,941.42, and the Internal Revenue Service is owed $174,770.74 for income taxes and associated interest and penalties. The U.S. Trustee, in support of his contention that taxes are consumer debts, cites two cases, *In re Booth,* 858 F.2d 1051 (5th Cir.1988), and *In re Bell,* 65 B.R. 575 (Bankr.E.D.Mich.1986). Neither case directly addressed the issue of taxes. The Fifth Circuit, in *Booth,* implied that taxes were consumer debts, but never so directly stated, nor did the court give any rationale that might shed some light in that area. The debtor, on the other hand, cites *In re Reiter,* 126 B.R. 961 (Bankr.W.D.Tex. 1991), and *In re Harrison,* 82 B.R. 557 (Bankr.Co.1987). Both cases dealt directly with the issue of taxes and stated that income taxes do not qualify as consumer debts. These cases were interpreting consumer debt as defined in § 101(8) (1992). Although these cases dealt with consumer debt as it relates to the co-debtor stay of § 1301(a), § 101(8) is an omnibus section which applies to all sections of the Code. Dr. Traub testified that these debts were personal debts owed to the State and the IRS for personal income taxes, but the Court finds the arguments of and cases cited by the debtors more compelling. The Court concludes that these two debts are not consumer debts.

■ The next debt the Court considers, $31,315.33 owed to the I.R.S., is a 100% penalty on federal taxes. Dr. Traub initially testified that this amount was personal,

but later clarified his answer to state that the 100% penalty was for the trust fund portion of taxes for Steven J. Traub, D.D.S., P.A. In this instance, Dr. Traub is personally liable for taxes incurred in the operation of his business. The Court concludes that this amount is not a consumer debt.

The testimony relating to the Matt Cohen debt of $18,000 was insufficient to establish this debt as a consumer debt. Therefore, the Court classifies it as a non-consumer debt.

■ Dr. Traub testified that the MBNA debt of $19,792.61 was charged on his credit card and that the money was used solely in his business. This debt is a non-consumer debt. The United States Trustee offered no evidence to support the assertion that the debt was a consumer debt.

■ The $269,375.20 owed to Steven J. Traub, D.D.S., P.A., is a consumer debt. Dr. Traub testified that the corporation loaned him this money as a form of tax shelter. Dr. Traub testified that the money was taken in lieu of salary and was used for personal and family purposes.

■ Next, the $8,684.14 owed to First National Bank in Albuquerque and the $22,292.37 owed to GMAC are debts incurred for the purchase of two family vehicles. The vehicles were used for personal, family or household purposes and thus are consumer debts.

■ Dr. Leech is owed $336.57 for medical services he rendered to Ms. Traub. This is clearly a consumer debt incurred for personal or family reasons.

The $139,234.94 owed to Security Pacific is the amount owed on the Traub family residence and is also clearly a consumer debt.

■ The debt to Dr. Traub's ex-wife has posed a problem in classification. In looking at the purpose in incurring the debt, clearly it cannot be said that a debt owed pursuant to a marital settlement agreement was for a business venture or other profit seeking activity. The debtors argue, however, that because the debt was attributable to the value of the business, a money-making venture, it is a non-consumer debt. Dr. Traub owes $220,993 to LeQuieu as a result of a property settlement pursuant to Dr. Traub and LeQuieu's divorce. Dr. Traub and LeQuieu agreed to that amount in their marital settlement agreement. The agreement was reduced to two separate notes which form the basis of LeQuieu's claim. Dr. Traub testified that the award "represented the valuation of my practice and her half share." Transcript, 43. Upon further questioning by counsel, Dr. Traub agreed that the sum was the value of LeQuieu's community interest in Dr. Traub's practice at that time. *Id.* at 44. This debt was not incurred for the purpose of funding Dr. Traub's business. The debt represents a division of the equity in the business. In the Court's opinion, any debt to a former spouse which reflects the distribution of the net value of the community should always be classified as a consumer debt. *See In re Palmer,* 117 B.R. 443 (Bankr.N.D.Iowa 1990). Therefore, the debt to LeQuieu is a consumer debt.

The summary of debt classification is as follows:

| | | |
|---|---|---|
| Consumer debt: | 6 debts totaling | $660,916.22 |
| Non-consumer debt: | 5 debts totaling | $287,820.10 |

---

■ The court in *In re Kelly* stated that "when more than half of the dollar amount owed is consumer debt, the statutory threshold is passed." *In re Kelly,* 841 F.2d 908, 913 (9th Cir.1988). Other courts have held that to determine whether the debts are primarily consumer debts, both the dollar amount and number of debts should be analyzed. *In re Johnson,* 115 B.R. 159 (Bankr.S.D.Ill.1990). Using either method

of analysis, the Court finds that the debts in this case are primarily consumer debts for the purposes of § 707(b).

## II. Whether the granting of relief would be a substantial abuse of the provisions of chapter 7.

■ After determining that the debts are primarily consumer debts, the court may dismiss a case filed by an individual debtor "if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor." § 707(b).

In addressing the second part of this two part test, courts have taken two approaches. The first approach is that "a finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse." *In re Kelly,* 841 F.2d at 915. *See also In re Krohn,* 886 F.2d 123 (6th Cir.1989); *United States Trustee v. Harris,* 960 F.2d 74, 22 B.C.D. 1281 (8th Cir.1992).

The evidence presented shows that the debtors do have the ability to pay. Dr. Traub's actual income after conversion to chapter 7 (June–December 1991) remained almost constant at an average of approximately $19,000 per month. When compared with his monthly expenses of approximately $10,000 per month, there is clearly an ability to pay. Under *Kelly,* this alone is sufficient to establish substantial abuse.

The second approach taken by the courts is the "totality of the circumstances" approach. *In re Green,* 934 F.2d 568 (4th Cir.1991). The court in *Green* stated that in addition to the ability to pay, it would consider the "totality of the circumstances," including the following factors:

1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
2. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
3. Whether the debtors' proposed family budget is excessive or unreasonable;
4. Whether the debtors' schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
5. Whether the petition was filed in good faith.

*Id.* at 572. Consideration of these factors, in addition to "the relation of the debtor's future income to his future necessary expenses" focus the court's attention on "the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors." *Id.*

As to the first factor, there was no evidence presented that the petition was filed because of sudden illness, calamity, disability, or unemployment.

The Court finds that because the debtors do have the ability to repay, the second factor is not applicable.

The Court finds that the debtors' family budget is excessive or unreasonable. Cash advances and withdrawals, which are as high as $5000 per month, represent money used for personal purposes including the "races," ski trips to Telluride and Taos, and many other expensive pastimes. The debtors have monthly expenses for travel and entertainment, recreation, and gifts sometimes totaling over $7000 per month. Dr. Traub testified that he took ten trips to Taos, New Mexico, on ten consecutive weekends while in chapter 11. The debtors are not trying to conserve. Rather, they are continuing with a lifestyle of spending that this Court finds excessive.

Another factor that the court may consider is whether the debtors' schedules and statements reasonably and accurately reflect their true financial condition. The most grievous example of inaccuracy is the discrepancy between the debtors' chapter 7 estimate of income and the actual income. The debtors estimated their income at approximately $10,000 per month. The testimony showed that, in fact, Dr. Traub's income for the first six months while in chapter 7 was closer to an average of approximately $19,000 per month.

The final factor for this Court to analyze is the factor of good faith. The Court finds that the debtors' filing was not made

in good faith. One indication of this was found in Dr. Traub's testimony during the final hearing. He testified that at his July exam, taken pursuant to Fed.R.Bankr.P. 2004, he stated that he planned to pay all his creditors except his former wife, LeQuieu. He also testified at the final hearing that LeQuieu was not deserving of the income Dr. Traub earned and that LeQuieu had more money than she knew what to do with.

Dr. Traub's estimate of expenses and income for his chapter 7 changed from his chapter 11 estimates. Specifically, his chapter 7 estimate for his income was approximately half of his income estimate for his chapter 11. His actual income, as discussed previously, did not fall to half of his previous income, but rather, remained constant at approximately $19,000 per month. Dr. Traub has yet to amend these schedules.

Exhibit 2, a summary of operating reports filed while Dr. Traub was in chapter 11, includes numerous large cash withdrawals. Dr. Traub testified that some of this cash was used for ski trips to Taos and Telluride. Shortly before filing, Dr. Traub transferred two cars to his son. This, in conjunction with the discussion of the factors above, including the huge disparity between the estimated and actual income, the excessive budget, and the treatment of LeQuieu, leads the Court to conclude that the filing was not made in good faith.

In summary, whether using the ability to pay approach or the totality of the circumstances approach, the Court finds that a granting of relief would be a substantial abuse of the provisions of chapter 7.

Finally, § 707(b) states that there shall be a presumption in favor of granting relief. The Court in *In re Kelly* stated that "the presumption is in reality a caution and a reminder to the bankruptcy court that the Code and Congress favor the granting of bankruptcy relief, and that accordingly 'the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.'" *Kelly* 841 F.2d 908, 917 (9th Cir.1988), *citing* 4 Collier on Bankruptcy ¶ 707.08, at 707–23 (15th ed. 1992). In the case at bar the presumption was clearly overcome.

### CONCLUSION

After reviewing the evidence presented, the Court finds that the debts are primarily consumer debts and that the granting of relief would be a substantial abuse of the provisions of chapter 7. The Court will grant the U.S. Trustee's motion to dismiss the debtors' chapter 7 case under § 707(b).

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052. An appropriate order will enter.