**In re Donald Eugene DICKERSON, Debtor.**

**Bankruptcy No. 92–20822.**

United States Bankruptcy Court,
N.D. Georgia,
Gainesville Division.

Feb. 17, 1993.

James H. Morawetz, Atlanta, GA, for Donald F. Walton, U.S. Trustee.

Bob McFarland, McFarland & Wagner, Cumming, GA, for debtor.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This case came before the Court on January 29, 1992, for a hearing on the United States Trustee's Motion to Dismiss Pursuant to § 707(b) of the Bankruptcy Code. The United States Trustee was represented by James H. Morawetz and the Debtor by Bob McFarland. After hearing testimony from Robert Bayne Parker, collection manager for Georgia Telco Credit Union (a creditor in the case) and from the Debtor, the Court continued the hearing to February 8, 1992, at which time the Debtor's testimony was completed and the evidence was closed.

### FINDINGS OF FACT

Based on the schedules of record in the case and on the testimony and documentary evidence introduced at the hearing, the Court makes the following findings of fact:

1. The $60,000.00 second mortgage indebtedness to Georgia Telco Credit Union listed on the Debtor's *Schedule D—Creditors Holding Secured Claims* was incurred for the purpose of consolidating pre-existing indebtedness, including a pre-existing second mortgage indebtedness in the approximate amount of $38,000. This pre-existing second mortgage indebtedness had, in turn, been incurred for the primary purpose of consolidating credit card debts, and the remainder of the indebtedness paid off by the Georgia Telco Credit Union second mortgage loan likewise consisted primarily of credit card debts. The Debtor has surrendered to his former wife, Alice Dickerson, his interest in the real property which serves as security for the Georgia Telco Credit Union indebtedness; however, he is required by the terms of their divorce decree to make the payments on this indebtedness in the approximate amount of $800.00 per month. The former wife, on the other hand, is responsible for making the payments on the $35,000 first mortgage on the property, which is held by Home Federal Savings & Loan.

2. The remainder of the indebtedness reflected on the Debtor's schedules consists of credit card debt in the amount of $5,500.00, plus a possible deficiency on an automobile loan from Mazda American Credit in the original amount of $22,900.00, the Debtor having surrendered the automobile which served as security for said loan.

3. The Debtor is employed by Southern Bell in a sales capacity and receives a base

salary of approximately $43,000 per annum, plus sales commissions. In his original *Schedule I* filed with his Chapter 7 petition on May 20, 1992, the Debtor represented that his total gross income was $3,600.00 per month, or $43,200 per year, specifically indicating that this figure included "current monthly gross wages, salary, and commissions and any overtime." However, this figure did not in fact include the Debtor's sales commissions, which he receives on a monthly basis. On January 27, 1993, two days prior to the commencement of the hearing on the United States Trustee's motion to dismiss, the Debtor filed an Amended *Schedule I* disclosing that his gross income for 1992,

including commissions, was actually $5,763.38 per month, or approximately $69,000.00 per year, an increase of 60% over the original figure. The net take-home pay reported by the Debtor on his Amended *Schedule I* increased from $2,717.00 to $3,943.16, a difference of $1,226.16.

4. Along with his Amended *Schedule I*, the Debtor filed an Amended *Schedule J* in which he reported certain changes in his monthly expenditures, the net effect of which was to increase his total reported monthly expenditures reported from $2,717.00 to $3,874.64, a difference of $1,157.64. Included in these changes were the following:

| | Original Schedule J | Amended Schedule J |
|---|---|---|
| Rent or home mortgage payment: | $900.00 | $1,000.00 |
| Clothing: | 50.00 | 150.00 |
| Transportation (not including car payments) | 500.00 | 622.53 |
| Life insurance | 42.00 | 126.76 |
| Health insurance | 0 | 196.78 |
| Auto insurance | 225.00 | 35.00 |
| Taxes not deducted from wages | 0 | 269.42 |
| Management retirement account | 215.00 | 319.15 |
| Other expenses | 45.00 | 410.00 |
| (Increased to reflect "Lease/Purchase on 1989 Mercury Automobile") | | |

5. The Debtor testified that the $1,000.00 per month rent payment is paid to his girl-friend, Jessica Kelly, with whom he resides, and that the $410.00 per month motor vehicle lease payment is also paid to her. Neither of these purported lease agreements has been reduced to writing. Based on the Debtor's testimony, it appears that the $1,000.00 rent payment represents more than 60% of Ms. Kelly's monthly mortgage payment, and based on the Debtor's Exhibit 14 introduced at the hearing it appears that he also pays the monthly utilities for the residence. In addition, the Debtor has budgeted $75.00 per month for "home maintenance."

6. Two of the expense items listed on the Debtor's Amended *Schedule J* are duplicative, to wit:

a) The $622.53 "transportation expense" claimed by the Debtor is based on the total mileage driven by him in 1992 multiplied

by $0.28 per mile, an amount sufficient to pay the acquisition cost of a motor vehicle as well as the operating expense. Therefore, the Debtor's monthly motor vehicle "lease/purchase" payment in the amount of $410.00 is duplicative of this. expense item. In addition, the Debtor testified that he is reimbursed for business travel by his employer at the rate of $0.10 per mile, yet neither his "transportation expense" nor the income reported on his Amended *Schedule I* reflect this additional income.

b) The $93.44 per month expense for "flexlife insurance" budgeted by the Debtor has also been deducted from his wages in arriving at the net take-home pay as shown on his Amended *Schedule I.*

7. The Debtor conceded that after October of 1993 he will no longer be obligated by his divorce decree to maintain health and life insurance coverage for the benefit of his

former wife. Accordingly, the amounts budgeted for these obligations ($196.78 per month and $31.52 per month, respectively) will thereafter represent additional disposable income to him.

8. The Debtor's budgeted expense of $500.00 per month for food is excessive on its face for a single individual. Furthermore, the Debtor has conceded that he is reimbursed for meals by his employer while traveling on business, yet his schedules do not account for such reimbursement.

9. The Court finds that the duplication of expenses reflected in the Debtor's amended schedules is eliminated and if his stated expenses for food and rent are reduced to reasonable amounts, he has sufficient disposable income both to fund the $800.00 per month second mortgage payment on his former wife's home and to pay at least $400.00 per month on his remaining unsecured debt.

### CONCLUSIONS OF LAW .

1. The debts sought to be discharged by Debtor are "primarily consumer debts" within the contemplation of 11 U.S.C. § 707(b). The Court rejects the Debtor's contention that the term consumer debt as used in this Code section does not include indebtedness secured by real property. "Consumer debt" is defined by 11 U.S.C. § 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose." There is no suggestion in this statutory language or elsewhere in the Bankruptcy Code that a debt which is secured by real property cannot constitute consumer debt. To the contrary, 11 U.S.C. §§ 524(c)(6)(B) & (d)(2), by making different provisions for the reaffirmation of consumer debt depending upon whether it is secured by real property, explicitly recognize that consumer debt may be secured by real property. See *In re Kelly,* 841 F.2d 908, 912 (9th Cir.1988). *Accord In re Palmer,* 117 B.R. 443, 477 (Bkrtcy.N.D.Iowa 1990); *In re Whitelock,* 122 B.R. 582, 587–8 (Bkrtcy. D.Utah 1990); *In re Wegner,* 91 B.R. 854, 857 (Bkrtcy.D.Minn.1988); *In re Vesnesky,* 115 B.R. 843, 846 (Bkrtcy.W.D.Pa.1990); *In re Johnson,* 115 B.R. 159, 163 (Bkrtcy.S.D.Ill. 1990). The determination of whether a particular indebtedness is consumer debt is governed not by whether the debt is secured or unsecured but by the purpose for which the debt was incurred. The evidence introduced at the hearing in this case established without dispute that all of the indebtedness listed on the Debtor's schedules was incurred for personal, family, or household purposes. *See In re Kelly, supra,* 841 F.2d at 913 (holding that indebtedness incurred to purchase home or to make home improvements constitutes consumer debt); *In re Palmer, supra,* 117 B.R. at 447 (lump sum award entered in favor of debtor's wife in a divorce decree held to constitute consumer debt).

2. The original *Schedule I* filed by the Debtor, in conjunction with the Amended *Schedule J,* represent a transparent attempt to conceal from the Court the availability of sufficient disposable income to pay well in excess of 50% of his unsecured debts over a three-year period. Based on the Debtor's conduct in this regard, the Court concludes that the granting of a discharge in this case would be a substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code.

IT IS THEREFORE ORDERED that this case stands DISMISSED pursuant to 11 U.S.C. § 707(b). It is FURTHER ORDERED, pursuant to 11 U.S.C. § 105(a), that the Debtor is ENJOINED AND PROHIBITED from filing another proceeding for relief under the Bankruptcy Code for a period of one hundred and eighty (180) days from the date of entry of this Order.

SO ORDERED.