In re William H. MORELAND, Mary J. Moreland, Debtors.

No. 5–02–00837.

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

Oct. 31, 2002.

Marilyn A. Solomon, Winchester, VA, trustee.

## DECISION and ORDER

ROSS W. KRUMM, Bankruptcy Judge.

Before the court is the United States Trustee's (herein "Trustee") motion to dismiss the Chapter 7 petition of the above-styled debtors (herein "Morelands") for substantial abuse of the provisions of Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). The matter was heard on September 5, 2002, at which time the court received evidence, heard oral argument and received authorities. The Trustee uses as a basis for his motion § 707(b) of the Bankruptcy Code. After considering the evidence, authorities and arguments of both parties, for the reasons set forth below, the Trustee's motion will be DENIED.

## FACTS

The facts in this case are not in dispute. On May 16, 2002, the Morelands filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On July 29, 2002, the United States Trustee moved this court to

dismiss the Morelands' case for substantial abuse of the Code under § 707(b).

The Trustee believes that the debtors must liquidate or abandon expensive pre-petition assets, replace them with less expensive assets, and cut other living expenses in order to avoid dismissal under § 707(b). The heart of the Trustee's argument is that the Morelands continue to maintain, post-petition, the lifestyle they maintained pre-petition at the expense of their pre-petition creditors. In particular, the Trustee argues that the debtors' pre-petition decisions to purchase a $12,000.00 Seadoo boat and a $20,000.00 Chevrolet Tahoe and to retain them post-petition are § 707(b) abuses. The Trustee also objects to some of their monthly expenditures: to wit, $1,895.00 a month for their mortgage, $433.00 a month for their food, $290.00 a month for their transportation, $736.00 a month for their automobile, and $541.00 a month in installment payments on other household items. The Trustee states that, based on the debtors' income, they would be able to service a "substantial portion" of their debt in Chapter 13, if some of the expenses they show were reduced or eliminated.

The debtors offered evidence at the hearing to address each of the objections raised. With respect to the vehicles, Mr. Moreland explained that he is an air traffic controller at Dulles Airport in northern Virginia. When the weather is inclement it is crucial that he be able to get to work as his services are most important during inclement weather. To this end, he requires a vehicle with four-wheel-drive capability to be sure that he can travel to and from work quickly and safely. The distance from debtors' home to Dulles was offered to explain the transportation and food cost. As to the Tahoe and mortgage payments, the evidence showed that Mrs.

Moreland is committed to running a child care business in her home that requires special interior fittings and that she needs the Tahoe in order to transport multiple infants simultaneously in proper car seats. Mrs. Moreland's testimony also revealed that she charges significantly less than is needed to generate enough revenue to permit the business to break even and that she supplies such things as food and diapers that increase her overhead. The debtors represented at trial that they intended to sell the Seadoo boat.

The question presented is whether these facts demonstrate a substantial abuse of Chapter 7 of the Bankruptcy Code that requires dismissal. To decide that question of law, this court turns to § 707(b) and the Fourth Circuit case law analyzing that section.

### ANALYSIS

Section 707(b) of the Bankruptcy Code reads as follows:

"(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested..."

Under Chapter 7 of the Bankruptcy Code, a debtor's non-exempt property is liquidated by the Trustee, the proceeds are distributed to his creditors, and the debtor receives a discharge of all of his dischargeable debts. Creditors may receive as much as a full repayment, or may receive nothing at all.[1] Section 707(b) allows the

---

1.  In fact, court statistics show that in excess of 75% of consumer Chapter 7 bankruptcies

courts to close the doors of Chapter 7 relief to some individual debtors for "substantial abuse," forcing them either to proceed under Chapter 13 or Chapter 11 and pay their creditors through a plan, or eschew bankruptcy relief altogether.

■■■ However, as the Fourth Circuit noted in *In re Green*, 934 F.2d 568, 570 (4th Cir.1991), Congress never defined *which* debtors ought be excluded from Chapter 7, i.e. what "substantial abuse" means, and there is little in the way of legislative history to shed light on the question. The *Green* Court interpreted § 707(b) and arrived at two conclusions: the fact that a debtor is solvent when he files his petition does not, alone, constitute substantial abuse under § 707(b); and the substantial abuse determination must be made on a case-by-case basis, in light of the totality of the circumstances. *Id.* The *Green* Court enumerated five factors to be considered when making this determination:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Id.* Also, the *Green* Court reasoned that the analysis of these factors should "reflect consideration of the Section 707(b) presumption in favor of granting the requested relief." *Id.* at 573. In concluding its opinion in the *Green* case, the Fourth Circuit listed three cases as points of reference for bankruptcy courts applying § 707(b): *In re Grant*, 51 B.R. 385 (Bankr. N.D.Ohio 1985); *In re Peluso*, 72 B.R. 732 (Bankr.N.D.N.Y.1987); and *In re Shands*, 63 B.R. 121 (Bankr.E.D.Mich.1985). In each of these cases, the bankruptcy court dismissed under § 707(b). However, in each case, the debtor(s) displayed some aggravating characteristic beyond mismanagement of resources that the court relied upon in dismissing. In *Grant*, the debtors were guilty of "free-wheeling spending."[2] In addition, the court questioned the good faith of the debtors and noted their failure to "realistically and accurately list their monthly expenditures..." *Grant* at 397. In *Peluso*, after remarking that the debtor had altered his schedules on three occasions, the court commented that "...the manner and degree to which Debtor's figures have been varied raises the degree of scrutiny the Court applies to all of the facts of Debtor's case." *Peluso* at 738. The debtor in *Peluso* also treated some creditors preferentially in order to protect co-signers, and, like the debtors in *Grant*, was still supporting emancipated children. In *Shands*, the debtor had arranged her expenses so as to pay *all* of her creditors except for her ex-husband, and was even

in the Western District of Virginia are "no asset" cases which yield nothing for creditors.

**2.** That is not to imply that the spending patterns of the debtors in *In re Grant* and the debtors before this court are at all similar. The Morelands have chosen sources of employment that turned out to be too expensive.

The Grants wound up in bankruptcy by putting their son on a $400.00/month allowance, spending $2100.00 in one visit to "an exclusive dress shop," and having $9,000.00 Christmas extravaganzas. *Id.* at 396. All of these expenses are in 1983 dollars, and still dwarf the expenses of the Morelands.

forthcoming about her intent to use her bankruptcy "against" her ex-husband. *Shands* at 124.

■ Taking together the *Green* factors and the three cases above, it appears to this court that there must be a strong showing of some additional, improper intent on the part of the debtor, aside from the intent to discharge one's debts, in order to warrant a dismissal under § 707(b). The purpose of Chapter 7 is to provide honest debtors with a discharge from their debts. Often debtors need a discharge because they have mismanaged their resources or made ill-advised financial decisions which are difficult to reverse. In this case, it is possible that the Morelands could have purchased a less expensive vehicle. It is possible that, years ago, they could have chosen different lines of employment and business ventures that, today, would put them in a more solvent position. They could have elected to live closer to Dulles Airport. They could have charged more for their day care services. The question is whether their choice to stick by those decisions now arises to substantial abuse of Chapter 7.

■ In applying the *Green* factors to this case the court finds:

1. No evidence that sudden illness, calamity or unemployment caused the filing;

2. No evidence of excessive purchase of consumer items or cash advances;

3. No evidence of a family budget that is excessive or unreasonable given the facts and circumstances of the debtors at filing. Well in advance of the petition date debtors made personal and business decisions that committed them to living a distance from Mr. Moreland's place of employment and to operating a day-care business. While, with hindsight, these decisions are not financially wise, they do not rise to a level of abuse which rebuts the

statutory presumption of "granting the relief requested."

It is clear to this court that the debtors will either have to revise their personal and business affairs in the future, or run the risk of another event of insolvency without, at least for 6 years, the benefit of another Chapter 7 discharge. However, debtors' unwillingness to commit at this time to such change is not indicative of abuse of the bankruptcy system in their current Chapter 7 bankruptcy.

Should the court adopt the position advocated by the U.S. Trustee, all debtors would be compelled to offer a plan to restructure their financial affairs post-petition as part of their filing since all debtors have mismanaged their finances to some degree by the time they arrive in Chapter 7. This court does not believe Congress intended the reach of § 707(b) to extend that far and this is reflected in *Green* by the holding that each case must be decided, on its own merits, using the factors as guidelines;

4. No evidence that debtors' schedules do not accurately reflect debtors' true financial condition; and

5. No evidence that the petition was not filed in good faith.

## CONCLUSION

This court does not see aggravating factors in this case which would lead to a finding "that granting relief would be a substantial abuse of the provisions of this chapter." The debtors may be guilty of financial mismanagement or error pre-petition of the kind that leads many to file Chapter 7 bankruptcies. But, their failure to display a reform of their pre-petition plight in their schedules and statement of affairs does not translate into § 707(b) abuse without some clear signal from Congress to that effect.

Having considered the evidence and the arguments of the Trustee and the debtors, and having considered the Fourth Circuit's analysis of § 707(b) of the Bankruptcy Code, this court holds that the U.S. Trustee fails to rebut the presumption found in the statute "in favor of granting the relief requested by the debtor." Accordingly, it is

**ORDERED:**

That the Trustee's Motion to Dismiss for Substantial Abuse is DENIED.