**In re Dennis Jay MARCOUX, Debtor.**

No. 02–23348.

United States Bankruptcy Court, D. Connecticut.

Nov. 10, 2003.

Robert B. Young, Esq., Law Office of Robert B. Young, Dayville, CT, for Debtor.

Holley L. Claiborn, Esq. and Patricia Beary, Esq., Office of the United States Trustee, New Haven, CT, for Movant, Carolyn S. Schwartz, United States Trustee.

### AMENDED * MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Carolyn S. Schwartz, United States Trustee for Region 2 ("the UST"), on February 10, 2003, filed a motion to dismiss the Chapter 7 bankruptcy case of Dennis Jay Marcoux ("the debtor") pursuant to Code § 707(b) alleging that granting the

* Typographical errors corrected on page 386.

debtor relief under Chapter 7 would be a "substantial abuse" of that chapter. The debtor objected to the motion. The court held a hearing on September 18, 2003, when the UST supported her motion by introducing the debtor's original and amended schedules, the answer he filed to the motion, and rested. The debtor presented his testimony, that of his wife and that of a real estate broker. Following the hearing, the debtor and the UST filed briefs in support of their positions.

## II.

## BACKGROUND

The debtor, a resident of Danielson, Connecticut, who filed a Chapter 7 petition on November 15, 2002, was then a 29 year old warehouse supervisor earning about $45,000 per year. The debtor's present financial difficulties resulted largely from debts incurred prior to his divorce in May, 2001, from Katherine Marcoux ("Katherine") who, during the marriage had been a non-working, full-time college student. Under the terms of the divorce decree (Exh. A), the debtor received the couple's house, subject to two undersecured mortgages thereon, and became solely responsible for credit card debt of $26,000. Katherine retained her car, a Kia.

Katherine defaulted on her car payments and the Kia was repossessed. A deficiency of $6,877.15 remains on the car loan for which the debtor and Katherine were jointly responsible. The debtor testified that Katherine had moved "out west," and that neither he nor any of his creditors know her whereabouts. (Tr. at 14, 39.)

The debtor, in June, 2002, with the mortgagee's consent, sold his house at a "short sale" for $158,000 which, after payment of associated expenses, was just sufficient to repay the first mortgage of

$135,000. The debtor received no cash from the sale (Tr. at 30), and a deficiency of $28,074.80 remains outstanding on the second mortgage.[1]

The debtor, in July, 2002, married his present wife, Doris Marcoux ("Doris"). The debtor, Doris, and Doris' two daughters, ages 5 and 8, from her previous marriage presently live with Doris' parents and pay them $450 monthly as rent. Living with the parents is a temporary accommodation and the debtor and Doris hope to move to an apartment of their own as soon as they are financially able to do so. (Tr. at 21, 59.) A real estate broker testified that the monthly rent for an apartment in the Danielson area ranges between $800 and $1500. (Tr. at 48.)

Doris, who had been earning about $23,000 per year, was recently terminated by her employer and has been looking for employment. (Tr. at 33, 36.) As a result of Doris' unemployment, the debtor pays the $426 monthly payment for Doris' minivan, a 2001 Chevrolet Venture. (Tr. at 25.) The expenses shown in the debtor's amended schedule include the $348 payment for the debtor's fully encumbered pickup truck and the transportation expenses for both vehicles. (Tr. at 24.) The schedule does not include a reserve for unanticipated expenses.

## III.

## ARGUMENTS

The UST argues that granting the debtor a discharge would be a "substantial abuse" of Chapter 7, warranting dismissal of the case under § 707(b). She contends that the debtor should reduce his scheduled monthly expenditures for food ($650) and transportation ($300); that Doris should immediately find employment, and

---

1. The first and second mortgages were held by the same mortgagee.

rely on relatives for free daycare; that the debtor's family should continue to reside with his in-laws and not move; and that Doris use a portion of the $700 monthly child support from her ex-husband "towards the family's monthly food expense . . . thus freeing up money for the Debtor to use to pay for [his] wife's car payment . . . [and] transportation expense." (UST's Brief at 13.) If all of these proposals are followed, the UST contends that the debtor would be able to fund 31% of his debt over three years under a hypothetical Chapter 13 plan.[2]

The debtor argues that his use of Chapter 7 is not a "substantial abuse" of that chapter; that the debtor has tried repeatedly, without success, to repay the debts incurred during his prior marriage; that he would not be able to fund a hypothetical Chapter 13 plan that would repay a significant portion of the debt; that his lifestyle is not at all extravagant; that his expenses are modest and are based on his family living with his wife's parents; that his divorce and his wife's present unemployment are mitigating factors; and that the UST has not presented any evidence sufficient to rebut the § 707(b) presumption in favor of the debtor.

## IV.

### DISCUSSION

Section 707(b) of the Bankruptcy Code provides:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest,[3] may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

Since the debtor does not dispute that he is an individual in a Chapter 7 case he voluntarily filed and whose debts are primarily consumer debts, the issue that remains is whether granting the debtor relief would be a "substantial abuse" of Chapter 7.

### A. Statutory Presumption

In considering the UST's motion, the statute mandates that "there shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b). In light of this presumption, the UST bears not only the burden of proving, by a preponderance of the evidence, that the debtor is not entitled to relief under Chapter 7, but also the burden of going forward with evidence to rebut or meet the presumption. See Fed.R.Evid. 301.[4] Fur-

---

2. The UST questions the validity of certain debts, arguing that if the debt were lower, the percentage of debt the debtor could repay might be more significant. Objections to claims, however, are not presently before the court.

3. Responding to a § 707(b) motion can appreciably raise a debtor's cost of filing a bankruptcy petition, and Congress has thus limited the filing of such motions to the court and the neutral United States Trustee.

4. Fed.R.Evid. 301, Presumptions in General in Civil Actions and Proceedings, states:

ther, "the determination of abuse must be based on factual findings supported by admissible evidence, and not by what amounts to inappropriate judicial notice of the court's own value judgments." *In re Harris*, 279 B.R. 254, 261 (9th Cir. BAP 2002).

 "The statutory presumption is obviously meant to be something more than simply a rule about the burden of proof, since that burden would already have been on the party seeking to dismiss the case .... It appears that the presumption is an indication that in deciding the issue, the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present." *In re Harris*, 279 B.R. at 259 (citing *Collier on Bankruptcy* ¶ 707.04[5][a]). Generally, the court should consider the debtor's expenses excessive only if they support a luxury lifestyle not enjoyed by most families. 6 *Collier on Bankruptcy* ¶ 707.04[2] (Alan N. Resnick et al, eds., 15th ed. rev.2003).

## B. "Substantial Abuse"

"Courts have been grappling with the issue of what constitutes 'substantial abuse' for purposes of Section 707(b) of the Bankruptcy Code since 1984 .... Congress did not define the term 'substantial abuse' in the text of the 1984 amendments to the Code," *In re Green*, 934 F.2d 568, 570 (4th Cir.1991); and "there is little in the way of legislative history to shed light on the question." *In re Moreland*, 284 B.R. 825, 828 (Bankr.W.D.Va.2002) (citing *In re Green*).

Section 707(b) reflects the tension between the fundamental policy concern of the Bankruptcy Code, granting the debtor an opportunity for a fresh start, and the interest of creditors in stemming abuse of consumer credit. The ambiguity of the statutory language is no doubt a reflection of Congress's inability to agree on a definition of substantial abuse which would encompass these countervailing considerations in all situations. Nevertheless, in unsuccessfully attempting to carve out such a definition, Congress considered and rejected the use of a threshold future income or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter 7 relief for consumer debtors. *In re Green*, 934 F.2d at 571 (citing rejection of such a bill by the Senate in 1982).

The Second Circuit, in *In re Kornfield*, 164 F.3d 778, 783 (2d Cir.1999), adopted a "totality of circumstances" approach in determining whether to dismiss a case under § 707(b) for substantial abuse.. Noting that "a division among courts exists over the degree of emphasis to be placed on the ability of the debtor to repay debts out of future income," the Second Circuit declined to "spell out in greater detail the precise content of the proper totality of circumstances test in this circuit." *Id.* at 783. It is fair to say, however, that *Kornfield* not only explicitly rejected a *per se* test, based solely on a debtor's gross income, then advanced by the U.S. Trustee, but *Kornfield* did not adopt, although it noted, the *per se* test employed by the Eighth and Ninth Circuits,[5] that a debtor's

---

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

5. *See, e.g. In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988); *In re Walton*, 866 F.2d 981, 985 (8th Cir.1989) (both holding that a debtor's ability to fund a Chapter 13 plan, standing

ability to pay his or her debt, standing alone, supports a conclusion of substantial abuse. *Id.* at 783.

■ "A totality of circumstances inquiry is equitable in nature ...." *Id.* at 784. Such an inquiry cannot be reduced to the mechanical application of mathematical formulae, but requires consideration of all the relevant circumstances,[6] such as:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*In re Green,* 934 F.2d at 572.

The Second Circuit Court of Appeals described *Kornfield* as "a paradigm of the case that Section 707(b) was designed for: debtors enjoying a substantial income but seeking to transfer the cost of an unnecessarily extravagant lifestyle to creditors."[7] *In re Kornfield* 164 F.3d at 784.

## C. Totality of Circumstances

■ The debtor's schedules indicate that he has a gross monthly income of $3,900.06 (Ex. 4, amended Schedule I); that, after the payroll deductions indicated, his monthly take-home pay is $2,792.27 (Ex. 4, amended Schedule I); and that his monthly expenses are $2,307.00 (Ex. 4, amended Schedule J). Solely on the basis of the schedules submitted by the debtor, his disposable income is $485.27. Taking into account the additional $426 the debtor will need for Doris' car payment, to which the UST has not objected, reduces the debtor's disposable income to $59.27 per month. As noted, the debtor's expense schedule includes no reserve for unanticipated expenses.

■ The UST argues that the debtor could reduce food expense of $650 per month by excluding food for the debtor's stepchildren, whom the debtor is not legally obligated to support. The court does not accept the UST's position and finds untenable and undue the proposition that providing food for one's stepchildren is indicative of the kind of extravagant lifestyle that the substantial abuse provision of § 707(b) was intended to curb. The court also finds the UST's argument that the debtor could reduce the $300 scheduled for gas and maintenance of the debtor's and Doris' vehicles not persuasive. The UST urges the court to assume that Doris' present unemployment will be short-lived and that she will shortly be earning in the neighborhood of $20,000 per year. Doris has testified that she is mak-

---

alone, warrants dismissal of a Chapter 7 case as substantial abuse).

**6.** Although the court believes its ruling in *In re Heffernan,* 242 B.R. 812 (Bankr.D.Conn. 1999), to which both parties cite, to be correct based on the facts (case dismissable under § 707(b) where debtors were healthy, solvent (if exempt assets are included), had no depen-

dents, and earned an annual income in excess of $115,000), the court recognizes that the discussion therein of *Kornfield* is cursory and inadequate.

**7.** The Kornfields' annual income for the three years prior to the filing of the petition was $472,445, $404,593, and $276,000.

ing an effort to find employment and that one of the children has medical problems for which the ex-husband provides no assistance.

The debtor established that his bankruptcy was precipitated by his unfortunate divorce; that he had made several attempts to repay the debts accrued during his prior marriage (Tr. at 13, 18); that he sold his first marital home and repaid the first mortgage, but the selling price was insufficient to repay the second mortgage or the credit card debt (Tr. at 30); that he sold most of the household furnishings acquired during his first marriage so that he could afford the gas to drive to work (Tr. at 39); and that he, Doris and his two stepchildren are presently residing with Doris' parents because they cannot afford housing of their own (Tr. at 21).

The UST does not dispute any of these assertions. The only extenuating circumstances she raises are the cryptic comment that "divorce is not a calamitous event," and that the debtor's misstatement of his marital status in his original schedules, prepared prior to his remarriage, should weigh against granting him a discharge, despite her acknowledgement that, "The U.S. Trustee believes that the debtor's lack of candor was in part accidental." (UST's Brief at 8, 11.)

## V. CONCLUSION

While acknowledging the UST's unique role mandated by Congress in § 707(b), the court considers the UST's motion clearly unsupported under the totality of circumstances approach and concludes that the UST has failed to rebut the statutory presumption in favor of granting the relief requested by the debtor. The debtor has only minimal exempt assets; he earns an unexceptional wage; the major debt arose prior to his divorce, not from luxury purchases or cash advances on the eve of

bankruptcy; the debtor has made attempts to manage his debt; and he appears to be living quite frugally. *Cf. In re Green,* 934 F.2d at 572. In short, the debtor appears to be in precisely the kind of unfortunate predicament that Chapter 7's fresh start policy was designed to alleviate. Accordingly, the UST's motion to dismiss the debtor's bankruptcy case, under § 707(b), for "substantial abuse" of Chapter 7 is denied. It is

SO ORDERED.